IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ARGON CREDIT LLC ) <br>     Debtor. ) <br> ) <br> LATONYA D. KITCHEN and KARENSA ) <br> HUTCHENS, ) <br>     Plaintiffs, ) <br> ) <br> FUND RECOVERY SERVICES, LLC, ) <br>     Defendant. ) <br> ) | Chapter 7 <br> NO:　2016-39654 <br> Hon. Deborah L. Thorne <br><br> Adv. Proc. No. _____ <br><br> **Class Action** |

# **COMPLAINT IN ADVERSARY PROCEEDING**

## **PARTIES**

1. Plaintiffs Latonya D. Kitchen and Karensa Hutchens, individuals, bring this action on behalf of themselves, and on behalf of a class of similarly situated persons pursuant to Rule 23. Plaintiffs are residents of the State of California and competent adults.

2. Plaintiffs are informed and believe and thereupon allege that Defendant Fund Recovery Services, LLC (FRS) is now, and at all times mentioned in this Complaint was, a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

3. Plaintiffs do not know the true names or capacities of the Defendants sued herein as DOES 1 through 100 inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and thereon allege, that each of these fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were

proximately caused by those defendants. Each reference in this complaint to "Defendant" or "Defendants" or to a specifically named defendant refers also to all defendants sued under fictitious names.

4. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned each of the Defendants, including all Defendants sued under fictitious names, and each of the persons who are not parties to this action but are identified by name or otherwise throughout this complaint, was the alter ego of each of the remaining defendants, was the successor in interest or predecessor in interest, and was the agent and employee of each of the remaining defendants and in doing the things herein alleged was acting within the course and scope of this agency and employment.

## CLASS ALLEGATIONS

5. Plaintiffs are members of a class of persons, the members of which are similarly situated to each other member of that class. The Class is defined as follows:

> All California residents who obtained loans in 2015 or 2016 pursuant to a loan agreement identifying "Argon LLC" as the lender (usually on page 2 or 3) and from whom money was taken or received by Fund Recovery Services under the authority of the Argon loan agreement.

6. Plaintiffs are informed and believe, and thereupon allege, that the Class consists of at least 1,000 persons.

7. The identity of the members of the classes is ascertainable from Defendant's own business records or those of its agents.

8. The Plaintiffs and Class Members' claims against Defendant involve questions of law or fact common to the class that are substantially similar and predominate over

2
COMPLAINT IN ADVERSARY PROCEEDING

questions affecting individual Class Members in that all Class Members signed similar loan agreements that were subject to the same legal challenges based on the same evidence.

9. The claims of Plaintiffs are typical of the claims of the members of the Class.

10. Plaintiffs can fairly and adequately represent the interests of the Class.

**FIRST CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (BROUGHT AS AN INDIVIDUAL ACTION AND AS A CLASS ACTION)**

11. Plaintiffs incorporate in this cause of action the allegations contained in paragraphs 1 through 10, inclusive.

12. The Unfair Competition Law prohibits any person from engaging in unfair competition as that term is defined in Business and Professions Code § 17200, which includes any "unlawful, unfair or fraudulent business act or practice," "unfair, deceptive, untrue or misleading advertising," and any act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the Business and Professions Code.

13. As set forth in greater detail below, Defendant took money from Plaintiffs and the Class Members as a result of unfair, deceptive and unlawful business practices.

14. Debtor Argon Credit LLC was a Delaware limited liability company that had its principal place of business in Chicago, Illinois. Argon Credit LLC is the sole owner of Argon X.

15. Argon X was a Delaware limited liability company that had its principal place business in Chicago, Illinois. Argon X was wholly owned by Argon Credit LLC.

16. Both Argon entities are bankrupt entities.

17. In 2015 and 2016, the Argon entities, operating under variations of the "Argon" name, made installment loans to consumers, including California residents, using funds provided by third parties and then loaning the money out to consumers at a much higher interest rate.

18. On November 5, 2015, both Plaintiffs executed loan agreements with an Argon entity that identified the lender on page 3 of the Agreement as "Argon LLC."  Kitchen executed a loan agreement for $6,000 and Hutchens for $10,000.

19. One of the entities providing funds to Argon Credit LLC, and taking a security interest in Argon Credit revenue, was Fintech Financial, LLC, which subsequently assigned its rights under certain loan agreements to Princeton Alternative Income Fund, L.P., which subsequently assigned its rights to Defendant FRS.

20. On December 17, 2016, Argon Credit LLC and Argon X, LLC filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

21. FRS is a secured creditor of Argon X and is an unsecured creditor of Argon Credit and has filed claims in each entity's bankruptcy cases in excess of thirty-seven million dollars, ($37,000,000).

22. On December 30, 2016, FRS requested that the Court convert the Argon cases to one under Chapter 7 and that the Court grant FRS relief from the bankruptcy stay.

23. On January 11, 2017, this Court issued a "Stay Relief Order." (Doc. 68) According to the Court's later March 28, 2017 order (Doc. 129), the Stay Relief Order allowed FRS to exercise its rights as a secured creditor of Argon, to gain complete control of Argon's loan management system, bank accounts, etc., and to attempt to collect on

outstanding amounts supposedly owed by borrowers on the loans. In the March order, the Court further stated that the Trustee had agreed to surrender the Estate's interest in the net cash generated (after payment of collection costs) to FRS. (Doc. 129.)

24. Accordingly, FRS assisted by third parties, aggressively tried to collect money allegedly owed by borrowers to Argon and then kept the money it collected. During these collection efforts, FRS used the phone number and email address as well as collection letters and invoices associated with Argon. That is to say, FRS did not identify itself as FRS, but posed as Argon to the borrowers.

25. For example, FRS (using the Argon name and Argon support@argoncredit.com emailed address) emailed various California borrowers threatening to ruin their credit unless they paid a hefty sum of money. Here are some examples: On September 27, 2017 FRS emailed Stephen Brown demanding $2590, on December 28, 2017 it emailed Theresa Madrigal demanding $5,551, on December 14, 2017 it emailed Karen Vinson demanding $909.48, and on December 18, 2017 it emailed Dennis Cantrell demanding $3,364.70. Those emails made it clear the money had to be paid "immediately" in order to keep their "good credit rating." On July 13, 2017, FRS emailed Plaintiff Hutchens advising her it would automatically withdraw money from her bank account. However, on July 28, 2017, FRS emailed Hutchens again stating that she was two months delinquent and needed to submit a payment for the past due amount promptly.

26. Similarly, FRS caused many statements purporting to show that California borrowers owed money to Argon Credit to be mailed or emailed to the borrowers. For example, FRS sent a statement to Lindsay Fore dated August 5, 2017 claiming she owed

$1,143.72. Similarly, FRS sent a statement dated July 6, 2018 to Anitra Billops claiming she owed $2,684.25.

27. Under authority of the loan agreements, FRS took at least $3,468.45 from Plaintiff Latonya Kitchen's bank account and at least $4,144.26 taken from Plaintiff Karensa Hutchens' bank account.

28. Some of the borrowers, including Plaintiffs, attempted to commence arbitration cases against FRS, and a collection agency, First Associates Loan Servicing, alleging the Argon loan were void and therefore FRS and First Associates had no right to take money from them based upon the authority of the loan agreements. On February 26, 2018, this Court ruled that the commencement of arbitrations against FRS by California Argon borrowers was a violation of the automatic stay. (Doc. 278) Therefore, the statute of limitations has been tolled pursuant to 11 U.S.C. §108(c) to the extent it would have expired during the pendency of the bankruptcy stay.

29. On September 21, 2018, Karensa Hutchens obtained an order from this Court modifying the automatic stay to allow Hutchens to file an arbitration against FRS (and another company First Associates Loan Servicing). (Doc. 327)

30. On November 19, 2018, Latonya Kitchen obtained a similar order from the Court. (Doc. 359).

31. On both occasions, the Court ruled the arbitration agreement found in the loan agreements was binding on FRS.

32. Thereafter, Plaintiffs filed individual arbitrations before the American Arbitration Agreement against FRS and First Associates.

33. The claims against First Associates were settled with respect to Plaintiffs Kitchen and

6

COMPLAINT IN ADVERSARY PROCEEDING

Hutchens as well as on behalf of another 10 California borrowers.

34. Thereafter, Plaintiffs (and those 10 other borrowers) attempted to continue the arbitration case against FRS only. However, FRS refused to pay arbitration fees it (acting in the place of the lender) was required to pay with respect to all 12 California borrowers. Examples of the resulting correspondence from the AAA concerning Plaintiffs Kitchen and Hutchens are attached hereto as Exhibits 1 and 2 and there were similar notices with respect to the other 10 borrowers. Ultimately, AAA closed the arbitration cases due to FRS's refusal to pay the arbitration fees and banned FRS from participating in future arbitrations.

35. FRS also refused to participate in other arbitrations even where FRS was not required to pay any arbitration fees.

36. Based on the foregoing, it would be futile for any California borrower to attempt to arbitrate a claim against FRS. Therefore, FRS has waived its right to compel arbitration of claims against it.

37. In addition to the money FRS took from Plaintiffs, between January 2017 and April 2018, FRS was able to take $5.9 million from Argon borrowers, of which approximately 44% were California residents. After that date, FRS continued aggressive efforts to collect money from California residents, so that Plaintiffs are informed and believe, and thereupon allege, that FRS has taken at least $3,000,000 from California residents. All of this money was taken in violation of California law.

38. The loans made to the Class Members, all of which were California residents at the time, were subject to California law—the California Financing Law (CFL), Financial Code § 22000 et. seq.

39. As explained below, the loan agreements used in the loans to Plaintiffs and the Class Members, pursuant to which FRS took the money, violated California law and were void.

40. All the loans made to Plaintiffs and Class Members were "consumer loans" pursuant to Financial Code § 22203.

41. Financial Code § 22100 (a) provides "No person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner."

42. Financial Code § 22155 provides:

> No finance lender, broker, or mortgage loan originator licensee shall transact the business licensed or make any loan provided for by this division **under any other name** or at any other place of business **than that named in the license except pursuant to a currently effective written order of the commissioner authorizing the other name** or other place of business. The commissioner's order, while effective, shall be deemed to amend the original license issued pursuant to Section 22105 or 22109.1. (emphasis added)

43. A lender is authorized to engage in business through a subsidiary or related company. However, Financial Code § 22101 (d) specifies that "[t]his section does not prevent a licensee from engaging in the business of a finance lender or program administrator through a subsidiary corporation if the subsidiary corporation is licensed pursuant to this division." (emphasis added). This section reaffirms the principal that the lender's exact corporate name must be specified in the license. If a lender wants to operate through a subsidiary or related company, it must put the license in that subsidiaries' name.

44. Section 22106 (a) reiterates the above point:

　　The finance lender . . . license shall state the **name of the licensee**, and

8
COMPLAINT IN ADVERSARY PROCEEDING

> if the licensee is a partnership, the names of its general partners, and if a corporation or an association, the date and place of its incorporation or organization, and the address of the licensee's principal business location. On the approval and licensing of a location pursuant to Section 22101 or 22102, the commissioner shall issue an original license endorsed to show the address of the authorized location and, if applicable, **the name of the subsidiary corporation** licensed to operate the location. (emphasis added)

45. Finally, Financial Code § 22151 (which is discussed further in the next section) provides the finance lender license "along with any currently effective order of the commissioner approving a different name pursuant to Section 22155" shall be posted. This confirms there must be a license in the exact name of the lender or at least an order authorizing use of some variation of the exact name of the licensed lender.

46. In short, the lender must be named in the license. If a related company is making the loans, it must be named in the license. Whatever licensed company is making the loans, needs to clearly be identified in the loan agreement as the lender.

47. As indicated, the standard loan agreement used in all the subject loans stated that the lender was an Argon entity called "Argon LLC." That entity never had a finance lenders license and Argon Credit never obtained authorization from the State of California to make loans using that variation of its name. Although at one point in time, Argon Credit did have a license under the exact name "Argon Credit LLC," the loan agreements never identified "Argon Credit LLC" as the lender. Similarly, although at one point in time, Argon Credit had a license under the exact name "Argon Credit Inc.," the loan agreements did not clearly identify "Argon Credit Inc." as the lender. However, the loan agreements did, in the same document, refer vaguely to "Argon," "Argon Credit" (with no LLC), and "Argon Credit Corporation." Therefore, Argon Credit violated this requirement.

48. In addition, Financial Code § 22151 specifies that a finance lender's license "shall be conspicuously posted in the place of business authorized by the license." To the extent certain Argon entities did have a finance lenders license at various points in time, they never conspicuously posted the appropriate finance lenders license in the office authorized by the license. Since Argon Credit made loans to California residents solely over the Internet using its argoncredit.com website, it did publish a website page where it posted any finance lenders licenses it had. However, Argon Credit did not post any finance lenders license for California. Instead, it posted a copy of "certificate of registration" as a limited liability company that was allowed to transact business in the State of California. Although the average consumer might not know the difference, this certificate of registration was not a finance lender license and did not authorize Argon Credit to make loans of any kind to California residents. Therefore, Argon Credit violated this requirement.

49. Additionally, Financial Code § 22162 states that "No licensee shall place an advertisement disseminated primarily in this state for a loan unless the licensee discloses in the printed text of the advertisement, or in the oral text in the case of a radio or television advertisement, the license under which the loan would be made or arranged." Argon Credit disseminated loan offers exclusively targeting residents of the State of California that did not include the license under which the loan would be mad.

50. Financial Code § 22750 specifies that if any of the foregoing provisions is willfully violated, the loan agreement is void, and "no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction." Since

Argon Credit's aforementioned violations were willful, by operation of the law the loan agreements were void and FRS had no legal right to collect any money from Plaintiffs and the Class Members.

51. Either by using the ACH authorization in the loan agreements to withdraw money from Plaintiffs and Class Members' bank accounts, by tricking borrowers into paying by claiming Argon had a right to the money, by reporting this void debt to consumer reporting agencies in order to pressure borrowers to pay, or by otherwise threatening borrowers into paying, FRS took money which it had no "right to collect or receive." It took thousands of dollars from Plaintiffs and millions of dollars from class members.

52. As a proximate result of the violations of the UCL as set forth above, Plaintiffs suffered injury in fact and sustained monetary loss in terms of the amount of money FRS took.

53. FRS continues to try to collect money supposedly owed on these void loan agreements and therefore must be enjoined by the Court to cease such conduct.

## REQUEST FOR JURY TRIAL

WHEREFORE, Plaintiffs request trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment on all causes of action against Defendants as follows:

1. For an order certifying this matter as a class action;

2. For a declaration of the rights and liabilities of the parties including a declaration that the subject loans were void, that FRS has no right to principal or interest allegedly owed on the loans, and that Defendants cannot attempt to collect such fund including by furnishing information to consumer credit reporting agencies regarding the

referenced debt;

3. For preliminary and permanent injunctive relief pursuant to California Business and Professions Code § 17203 restraining and enjoining Defendants from trying to collect any money supposedly owed on the loans, such as by threatening to report or reporting the debt information set forth above and requiring it to notify all consumer reporting agencies to remove that debt information;

4. For restitution of any money paid to or taken by Defendants regardless of the amounts allegedly owed on the loans;

5. For prejudgment interest on the sum of money awarded as restitution;

6. For reasonable attorney's fees pursuant to California Civil Code § 1717, pursuant to the Private Attorney General doctrine in California Code of Civil Procedure § 1021.5, pursuant to the "common fund" doctrine, and pursuant to the "substantial benefit" doctrine.

7. For costs of suit incurred herein; and

8. For such other and further relief as the court may deem proper.

DATED:  March 18, 2021

Respectfully submitted,

By  *Jeffrey Wilens*

Jeffrey Wilens, Esq., Pro Hac Vice
Lakeshore Law Center
18340 Yorba Linda Blvd., Suite 107-610

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

Yorba Linda, CA 92886
714-854-7205
714-854-7206 (fax)
JEFF@LAKESHORELAW.ORG

Derek V. Lofland LLC, Esq. (#6280490)
The Law Office of Derek V. Lofland LLC
2038 & 1/2 N. Spaulding Ave, Unit 2
Chicago, IL 60647
(312) 545-5033
derekloflandesq@gmail.com



Northeast Case Management Center
Neil Currie, Vice President
1301 Atwood Avenue, Suite 211N
Johnston RI 02919
Telephone: (866) 293-4053
Fax: (866) 644-0234

February 22, 2021

Jeffrey Wilens, Esq.
Lakeshore Law Center
18340 Yorba Linda Boulevard, Suite 107-610
Yorba Linda CA 92886
**Via Email to: jeff@lakeshorelaw.org**

Peter J. Roberts, Esq.
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago IL 60606
**Via Email to: PRoberts@cozen.com**

Case Number: **01-19-0000-4052**
Latonya Kitchen
-vs-
Fund Recovery Services, LLC

Dear Parties:

On February 22, 2021, American Arbitration Association (AAA) has administratively closed this case due to non-payment of the arbitrator compensation deposit. Accordingly, the related billing has been cancelled.

Since the above-named business, Fund Recovery Services, LLC, has not complied with the Consumer Arbitration Rules, we must decline to administer any future cases involving this business and its consumers. We request that the AAA name be removed from the arbitration clause of this business so that there is no confusion to the public regarding our decision.

If the business advises AAA in the future of its intention to comply with AAA's Consumer Arbitration Rules and if applicable, resolves any outstanding payment obligations, AAA may consider at its sole discretion, accepting newly filed consumer cases going forward.

Additionally, according to R-1(d) of the Consumer Arbitration Rules, should AAA decline to administer this arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Pursuant to AAA's current policy, in the normal course of our administration, AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

Sincerely,
/s/
Meghan Richardson
Manager of ADR Services
Direct Dial: (401)537-6630
Email: MeghanRichardson@adr.org

MR/ao

EXHIBIT 1  Page 1 of 2



Northeast Case Management Center
Neil Currie, Vice President
1301 Atwood Avenue, Suite 211N
Johnston RI 02919
Telephone: (866) 293-4053
Fax: (866) 644-0234

January 13, 2021

Peter J. Roberts, Esq.
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago IL 60606
**Via Email to: PRoberts@cozen.com**

Case Number: **01-19-0000-4052**
Latonya Kitchen
-vs-
Fund Recovery Services, LLC

Dear Parties:

As stated in American Arbitration Association (AAA)'s email dated November 19, 2020, we have billed Fund Recovery Services, LLC per the Costs of Arbitration section of the Consumer Arbitration Rules, and we have not yet received payment. We have examined our records carefully, but if you believe we are in error, please contact me immediately.

Payment was due on December 3, 2020. The final deadline for payment is **February 12, 2021**. Your billing representative will receive an invoice separately. Please reference the invoice for payment options. This case will not proceed until payment is received. **If the fees remain unpaid, AAA will close the case.**

Further, should AAA close the case due to the Business's failure to remit payment, it would constitute a failure to adhere to our policies regarding consumer claims. Therefore, we may decline to administer future consumer arbitrations involving the Business and may request that the Business remove AAA's name from its consumer arbitration clause so that there is no confusion to the public regarding our decision. Additionally, if the Business previously registered its consumer arbitration clause, it will be removed from the Consumer Clause Registry.

If in the future the business advises of its intention to comply with AAA's Consumer Arbitration Rules and if applicable, resolves any outstanding payment obligations, AAA may consider at its sole discretion, accepting newly filed consumer cases going forward.

Lastly, according to R-1(d) of the Consumer Arbitration Rules, should AAA decline to administer this arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Sincerely,
/s/
Meghan Richardson
Manager of ADR Services
Email: MeghanRichardson@adr.org

MR/ao

cc:    Jeffrey Wilens, Esq.

EXHIBIT 1  Page 2 of 2



Northeast Case Management Center
Neil Currie, Vice President
1301 Atwood Avenue, Suite 211N
Johnston RI 02919
Telephone: (866) 293-4053
Fax: (866) 644-0234

February 22, 2021

Jeffrey Wilens, Esq.
Lakeshore Law Center
18340 Yorba Linda Boulevard, Suite 107-610
Yorba Linda CA 92886
**Via Email to: jeff@lakeshorelaw.org**

Peter J. Roberts, Esq.
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago IL 60606
**Via Email to: PRoberts@cozen.com**

Case Number: **01-18-0004-2156**
Karensa Hutchens
-vs-
Fund Recovery Services, LLC

Dear Parties:

On February 22, 2021, American Arbitration Association (AAA) has administratively closed this case due to non-payment of the arbitrator compensation deposit. Accordingly, the related billing has been cancelled.

Since the above-named business, Fund Recovery Services, LLC, has not complied with the Consumer Arbitration Rules, we must decline to administer any future cases involving this business and its consumers. We request that the AAA name be removed from the arbitration clause of this business so that there is no confusion to the public regarding our decision.

If the business advises AAA in the future of its intention to comply with AAA's Consumer Arbitration Rules and if applicable, resolves any outstanding payment obligations, AAA may consider at its sole discretion, accepting newly filed consumer cases going forward.

Additionally, according to R-1(d) of the Consumer Arbitration Rules, should AAA decline to administer this arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Pursuant to AAA's current policy, in the normal course of our administration, AAA may maintain certain electronic case documents in our electronic records system. Such electronic documents may not constitute a complete case file. Other than certain types of electronic case documents that AAA maintains indefinitely, electronic case documents will be destroyed 18 months after the stated closing date.

Sincerely,
/s/
Meghan Richardson
Manager of ADR Services
Direct Dial: (401)537-6630
Email: MeghanRichardson@adr.org

MR/ao

EXHIBIT 2  Page 1 of 2



Northeast Case Management Center
Neil Currie, Vice President
1301 Atwood Avenue, Suite 211N
Johnston RI 02919
Telephone: (866) 293-4053
Fax: (866) 644-0234

January 13, 2021

Peter J. Roberts, Esq.
Cozen O'Connor
123 North Wacker Drive, Suite 1800
Chicago IL 60606
**Via Email to: PRoberts@cozen.com**

Case Number: **01-18-0004-2156**
Karensa Hutchens
-vs-
Fund Recovery Services, LLC

Dear Parties:

As stated in American Arbitration Association (AAA)'s email dated November 19, 2020, we have billed Fund Recovery Services, LLC per the Costs of Arbitration section of the Consumer Arbitration Rules, and we have not yet received payment. We have examined our records carefully, but if you believe we are in error, please contact me immediately.

Payment was due on December 3, 2020. The final deadline for payment is **February 12, 2021**. Your billing representative will receive an invoice separately. Please reference the invoice for payment options. This case will not proceed until payment is received. **If the fees remain unpaid, AAA will close the case.**

Further, should AAA close the case due to the Business's failure to remit payment, it would constitute a failure to adhere to our policies regarding consumer claims. Therefore, we may decline to administer future consumer arbitrations involving the Business and may request that the Business remove AAA's name from its consumer arbitration clause so that there is no confusion to the public regarding our decision. Additionally, if the Business previously registered its consumer arbitration clause, it will be removed from the Consumer Clause Registry.

If in the future the business advises of its intention to comply with AAA's Consumer Arbitration Rules and if applicable, resolves any outstanding payment obligations, AAA may consider at its sole discretion, accepting newly filed consumer cases going forward.

Lastly, according to R-1(d) of the Consumer Arbitration Rules, should AAA decline to administer this arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

Sincerely,
/s/
Meghan Richardson
Manager of ADR Services
Email: MeghanRichardson@adr.org

MR/ao

cc:    Jeffrey Wilens, Esq.

EXHIBIT 2  Page 2 of 2