**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE ARGON CREDIT LLC | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | Case No. 16-39654 |
| | ) | Judge Deborah L. Thorne |
| LATONYA D. KITCHEN and KARENSA | ) | |
| HUTCHENS, | ) | Adv. Proc. No. 21-00048 |
| Plaintiffs, | ) | |
| v. | ) | |
| FUND RECOVERY SERVICES, LLC, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The matter comes before the court on a motion to dismiss the amended adversary complaint

filed by Latonya D. Kitchen and Karensa Hutchens (together, "Plaintiffs") in which they allege

that defendant Fund Recovery Services, LLC ("FRS") violated California law in three ways when

it collected on certain consumer loans extended to Plaintiffs by two Argon entities ("Argon" or the

"Debtors").   As explained below, the motion to dismiss is granted without prejudice as to

Plaintiffs' breach of contract claim and denied as to Plaintiffs' other claims

**BACKGROUND**

In 2015 and 2016, Argon entered into consumer loan agreements with California

residents—agreements which identified "Argon LLC" as the lender.[1]   Plaintiffs allege on

information and belief that 1,000 or more people entered into those consumer loan agreements.

Argon financed these consumer loans by borrowing under a loan and security agreement ("LSA"),

---

[1] This background largely comes from the facts pled by the Plaintiffs in their Amended Complaint.  These pleaded facts are taken as true for the purposes of a motion to dismiss under Rule 12(b)(6) and for facial challenges under Rule 12(b)(1).  The court also may take judicial notice of the contents of its dockets in the bankruptcy case and the present adversary proceeding.  *See In re Brent*, 458 B.R. 444, 455 n. 5 (Bankr. N.D. Ill. 2011).

giving Argon's lender a security interest in the consumer loan receivables.  That secured lender subsequently assigned all rights and remedies under the LSA—and its interest in the consumer loan receivables—to another entity, which subsequently assigned them to FRS.

In December 2016, the Debtors filed voluntary petitions for chapter 11 relief under the United States Bankruptcy Code.[2]  FRS is a secured creditor of Argon X, LLC and holds an unsecured claim against Argon Credit LLC, with a total amount claimed against both entities of approximately $37 million.  Due to the Debtors' inability to adequately protect FRS's property interest in the consumer loan receivables, the court modified the automatic stay and entered an order allowing FRS to begin collecting on the consumer loans and applying amounts collected against FRS's secured claim.  *See* Dkt. No. 129.

During these collection efforts, FRS presented itself to borrowers as Argon by using the name, phone number, email address, collection letters and invoices associated with Argon.  Moreover, FRS threatened to report delayed payments and nonpayments to credit rating agencies to ruin Plaintiffs' credit if they did not pay immediately.  Under the heading "Payment Method," the consumer loan agreements included an elective option (referred to as an "ACH Authorization") by which Plaintiffs could authorize Argon to debit Plaintiffs' checking accounts for amounts owing on each scheduled payment date or thereafter.  *See* Dkt. No. 279, Exhibit 1, at 9.  The consumer loan agreements provided that the ACH Authorization would remain in full force and effect until "Argon LLC" had "received written notification from [Plaintiffs] of its termination."  *Id*. at 10.  FRS used or threatened to use the ACH Authorization to take money from Plaintiffs' accounts.

FRS's collection efforts paid off.  Specifically, by "[c]laiming the authority of the loan agreements, FRS received payments or took at least $3,468.45 from Plaintiff Latonya Kitchen's

---

[2] In January 2017, the jointly administered cases were converted to chapter 7.

bank accounts and at least $4,144.26 taken from Plaintiff Karensa Hutchens' bank accounts." Adv. Dkt. No. 13, para. 34.  Nearly all these amounts paid by or taken from Plaintiffs were applied toward the finance charges provided for in the consumer loan agreements.

In response to FRS's collection efforts, Plaintiffs obtained legal counsel and began pursuing remedies against Argon, FRS and another financial company.  Plaintiffs and other borrowers not named in this proceeding obtained orders from the court modifying the automatic stay, which allowed Plaintiffs and others to pursue arbitration against FRS in California as required by the consumer loan agreements.  *See* Dkt. Nos. 327, 359.  FRS apparently refused to pay the arbitration fees or participate in the arbitration.  As a result, the arbitrators closed the cases.  This led to the present adversary proceeding.[3]

Plaintiffs' amended complaint alleges three causes of action against FRS.  First, Plaintiffs claim that the consumer loan agreements that they (and various unknown class members) entered into with Argon are either voided, or contain provisions invalidated, by operation of the California Financing Law ("CFL").  Cal. Fin. Code § 22000 *et. seq*.  Plaintiffs allege that they lost money when FRS collected from them under the authority of the void, or partially invalid, consumer loan agreements in violation of California's Unfair Competition Law ("UCL").  Cal. Bus. & Prof. Code § 17200 *et. seq*.  Second, Plaintiffs claim that FRS's collection efforts breached the consumer loan agreements, causing Plaintiffs to incur damages.  Third, Plaintiffs claim that FRS's collection efforts violated California's Fair Debt Collection Practices Act ("CFDCPA").  Cal. Civ. Code § 1788 *et. seq*.

---

[3] Plaintiffs filed their initial complaint on March 19, 2021 (Adv. Dkt. No. 1), followed by their amended complaint on May 28, 2021 (Adv. Dkt. No. 13).  FRS filed a motion to dismiss the amended complaint (Adv. Dkt. 14).  The motion to dismiss was followed by a response from Plaintiffs (Adv. Dkt. No. 19) (the "Response").  Finally, FRS filed a reply to the Response (Adv. Dkt. No. 20).

In the context of their first claim (the "UCL Claim"), Plaintiffs allege that Argon violated the CFL by lending under the name "Argon LLC" though its lending license was under different names; by lending from an entity with an address that did not match the one on its license; and by failing to properly post the license online (where the loans were made) or properly disclose the license in advertising materials.

Plaintiffs claim that because these violations were willful, the CFL voids the consumer loan agreements in their entirety (including Plaintiffs' obligations under those agreements to repay the principal amount of their loans). In the alternative, Plaintiffs claim that if the violations were only negligent, then the CFL invalidates only those provisions in the consumer loan agreements requiring them to pay interest and charges, while the agreements themselves (and Plaintiffs' obligations to repay the principal amount of their loans) remain enforceable. Plaintiffs also allege that they would not have made any payments to FRS if they had known that the consumer loan agreements were void or partially invalid in ways that nullified their obligations to make those payments.

FRS seeks dismissal of the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, which are applicable in the bankruptcy court under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. FRS argues that (I) the UCL Claim should be dismissed (A) under Rule 12(b)(1) because Plaintiffs have not alleged any concrete injury in fact, so they have no constitutional standing to invoke the court's subject matter jurisdiction, and also (B) under Rule 12(b)(6) because without having alleged any economic injury that resulted from FRS's unfair business practices, Plaintiffs have no statutory standing to sue under the UCL; (II) Plaintiffs' breach of contract claim should be dismissed under Rule 12(b)(6) because the pleadings neglect to establish certain essential elements of the cause of action; and (III) Plaintiffs' third claim

4

(the "CFDCPA Claim") should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction on the same grounds as the UCL Claim.

For the following reasons, FRS's motion to dismiss is denied as to the UCL Claim and the CFDCPA Claim and granted as to the breach of contract claim, which is dismissed without prejudice.

### JURISDICTION

The court has core jurisdiction over claims against the estate and other proceedings affecting the liquidation of the assets of the estate.  28 U.S.C. §§ 1334(b), 157(b)(2)(B), (O). Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1409(a).[4]  Neither party has challenged the court's jurisdiction.

### STANDARDS ON MOTION TO DISMISS

FRS moves to dismiss the amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Moving under Rule 12(b)(1), FRS challenges the court's subject matter jurisdiction.  Moving under Rule 12(b)(6), FRS asserts that Plaintiffs have failed to state a claim upon which relief can be granted.

Surviving a motion to dismiss under Rule 12(b)(6) requires that the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)) (internal citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[4] As noted by FRS in their motion to dismiss, Plaintiffs failed to properly allege jurisdiction in their amended complaint pursuant to Federal Rule of Bankruptcy Procedure 7008.  Plaintiffs should correct this omission if they choose to amend their complaint.  Such an omission alone however is insufficient grounds for dismissal if, as here, "the complaint otherwise demonstrates jurisdiction." *In re Smith*, 489 B.R. 875, 902 (Bankr. M.D. Ga. 2013).

the defendant is liable for the misconduct alleged." *Id*. FRS's motion to dismiss presents a Rule 12(b)(6) challenge to Plaintiffs' UCL Claim and breach of contract claim.

If a facial challenge has been raised, the standard for surviving a motion to dismiss under Rule 12(b)(1) is the same as the *Iqbal-Twombly* standard for a Rule 12(b)(6). *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015). A facial challenge tests the sufficiency of the plaintiff's allegations to establish subject matter jurisdiction. *Id*. at 173. This contrasts with a factual challenge which claims that there is in fact no subject matter jurisdiction regardless of the form of the pleadings. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009) (finding no subject matter jurisdiction where plaintiff/creditor had sold the rights to the debts at issue). FRS's motion to dismiss presents a facial challenge to Plaintiffs' UCL Claim and CFDCPA Claim.

**DISCUSSION**

**I.      *Plaintiffs' Allegations Suffice to Establish Their Constitutional and Statutory Standing to Bring the UCL Claim***

To sue under the UCL, Plaintiffs must allege that they "suffered an injury in fact" that is "concrete" enough to establish their constitutional and statutory standing to do so. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016), *as revised* (May 24, 2016). FRS argues that Plaintiffs' amended complaint fails to plead facts that support a reasonable inference that Plaintiffs suffered any injury in fact sufficient to confer (A) constitutional standing under Article III to invoke the court's subject matter jurisdiction, or (B) statutory standing to sue under the UCL. That argument fails. The amended complaint clearly alleges that Plaintiffs "lost money" as "the result of" FRS's violation of the UCL in the sense required to establish both constitutional and statutory standing. *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 884 (Cal. 2011).

6

A. *Plaintiffs allege a constitutional injury in fact if they allege "economic injury" within the meaning of the UCL*

A court that rules or grants relief on a complaint in the absence of any "Cases" or "Controversies" transgresses the limits on judicial authority established by Article III of the Constitution. The doctrine of standing developed through Supreme Court case law "to ensure that federal courts do not exceed their authority." *Spokeo, Inc.*, 136 S. Ct. at 1547. At the pleading stage of a case, standing doctrine requires that the "plaintiff, as the party invoking federal jurisdiction, bear[] the burden" of clearly alleging facts that demonstrate that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. Of these, only the first requirement (that is, injury in fact) is presently at issue.[5]

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc.*, 136 S. Ct. at 1548 (internal quotations omitted). An injury or harm is concrete provided it "actually exist[s]". *Id*. at 1549. "While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005); *see also San Diego Cty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996) ("Economic injury is clearly a sufficient basis for standing."). Consequently, the California Supreme Court has recognized that because "economic injury is itself a form of injury in fact, proof of lost money or property will largely overlap with

---

[5] While the second constitutional requirement for standing (that is, fair traceability to the defendant's challenged conduct) is similar to the UCL's requirement that a plaintiff's economic injury be *caused by* an unfair business practice, only the latter, statutory requirement is challenged by FRS in its motion to dismiss. That challenge is addressed in sub-part I.B of this Memorandum Opinion.

7

proof of injury in fact," so "the same allegations or proof that suffice to establish economic injury will generally show injury in fact as well." *Kwikset Corp.*, 246 P.3d at 887.

Indeed, the parties seem to agree that this is the case with the allegations in Plaintiffs' amended complaint. *Compare* Adv. Dkt. No. 13, para. 67 *with* Adv. Dkt. No. 14, para. 32. That is, if Plaintiffs have clearly alleged facts sufficient to demonstrate that they suffered an "economic injury" within the meaning of the UCL, then they have also alleged the kind of injury in fact necessary to establish standing under Article III.

### B. Plaintiffs allege "economic injury" that was "caused by" FRS's unfair business practices within the meaning of the UCL

The UCL prohibits unfair competition, including, among other things, any "fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Whether a particular act or practice is fraudulent depends on whether it would deceive a reasonable consumer, an objective standard that "raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (quotations omitted). To have statutory standing to bring a claim under the UCL, a private claimant must be "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The California Supreme Court has held that this statutory language means that a UCL claimant must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice … that is the gravamen of the claim." *Kwikset Corp.*, 246 P.3d at 885. The court considers these two requirements in turn.

Courts recognize diverse forms of economic injury. *See Kwikset Corp.*, 246 P.3d at 885 ("There are innumerable ways in which economic injury from unfair competition may be shown.").

The most immediately pertinent form of economic injury is exemplified in *Fireside Bank v. Superior Ct.*, 155 P.3d 268 (Cal. 2007).  In that case, defendant Fireside repossessed the van of one plaintiff Gonzalez (which she had purchased on credit for her father).  *Fireside Bank*, 155 P.3d at 272.  Fireside then sent Gonzalez a redemption notice that misstated the total amount due (that is, the amount she had to pay within 15 days to avoid having the van sold off) in violation of California's Rees-Levering Motor Vehicle Sales and Finance Act (the "RLMVSFA").  *Id*.  After Fireside sold the van, it filed a complaint against Gonzalez seeking a deficiency judgment for the remaining balance of Gonzalez' obligations to it.  Gonzalez' cross-complaint alleged illegal, unfair and deceptive business practices under the UCL: namely, that by failing to comply with the RLMVSFA, Fireside forfeited the right to claim deficiencies, yet nonetheless pursued meritless collection actions because of that forfeited right.  *Id*.  The trial court found that Fireside failed to comply with the RLMVSFA, thus barring any deficiency judgment against Gonzalez.  *Id*. at 273. On appeal, the California Supreme Court concluded that Gonzalez (and other similarly situated plaintiffs) had standing to sue under the UCL because she (and other similarly situated plaintiffs) had paid Fireside in response to its "unlawful demand for payment."  *Id*. at 282; *see also Kwikset Corp.*, 246 P.3d at 887 ("In *Fireside…*, we concluded that the plaintiff had standing because the unfair business practice allegedly had resulted in repossession of her vehicle (a loss of property) and a monetary payment in response to an unlawful debt collection demand (a loss of money).").

With regard to the causation requirement, "to establish a fraud claim under the UCL, a plaintiff must demonstrate actual reliance. … However, actual reliance for purposes of a UCL claim … is inferred from the misrepresentation of a material fact."  *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017) (citations omitted).  Like the threshold question about whether a particular act or practice is fraudulently unfair, the question of whether any given

9

misrepresentation is material enough to infer actual reliance is judged under a reasonable consumer

standard, "and as such materiality is generally a question of fact." *Id*. (quoting *In re Tobacco II*

*Cases*, 207 P.3d 20, 39 (Cal. 2009)). "For purposes of pleading a fraudulent omissions claim under

the UCL …, a plaintiff satisfies the "as a result of" requirement by pleading that he would have

behaved differently if he had been aware of the information and the undisclosed information would

have been important to reasonable consumers." *Shin v. BMW of N. Am.*, No. CV 09-00398, WL

2163509, at *3 (C.D. Cal. July 16, 2009). In *Shin*, for example, plaintiffs satisfied this requirement

by alleging that they would not have purchased their vehicles at the price they paid or would have

purchased the vehicle with different wheels. *Id*.

According to the amended complaint, the economic injury suffered by Plaintiffs was the

loss of at least $3,468.45 from Plaintiff Kitchen's bank accounts and the loss of at least $4,144.26

from Plaintiff Hutchens' bank accounts. The fraudulently unfair business practices that allegedly

caused those losses include all of FRS's efforts to collect from Plaintiffs by claiming the authority

of the void or partially invalid loan agreements without any right to do so. As the amended

complaint states:

> Either by using the ACH authorization in the loan agreements to withdraw money from
> Plaintiffs and Class Members' bank accounts, by tricking borrowers into paying by
> claiming Argon had a right to the money, by reporting this void debt to consumer reporting
> agencies in order to pressure borrowers to pay, or by otherwise threatening borrowers into
> paying, FRS took money which it had no "right to collect or receive." It took thousands of
> dollars from Plaintiffs and millions of dollars from class members, the vast majority of
> which was interest and charges. Adv. Dkt. No. 13, para. 66.

In other words, FRS misrepresented or omitted many pieces of information that would have been

important to reasonable consumer borrowers, including its own identity and the legal status of its

right to collect or receive loan payments and other finance charges from them. Moreover,

Plaintiffs' amended complaint clearly alleges that they would have behaved differently in response

10

to FRS's collection efforts had they known that the consumer loan agreements were voided, or partially invalidated, by the CFL.

For present purposes it is immaterial whether Plaintiffs would have owed money to FRS if the consumer loan agreements had been valid. If the facts alleged in the amended complaint are accepted as true, as they must be for purposes of evaluating the motion to dismiss, then the reasonable inference is that the consumer loan agreements were either entirely void or partially invalid. Either way, FRS had no right to collect from Plaintiffs in the manner it did. Consequently, much like the payment made by Gonzalez to Fireside Bank, Plaintiffs made "monetary payment[s] in response to an unlawful debt collection demand," which is a loss of money sufficient to establish the economic injury necessary for standing to sue under the UCL. *Kwikset Corp.*, 246 P.3d at 887. Because Plaintiffs allege more than a bare procedural violation of the statute, the recent spate of circuit court decisions finding that "the bare procedural violation of the [Fair Debt Collection Practices Act] alone is insufficient to establish [Article III] standing" does not bear directly on the present proceeding. *Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, No. 20-5902, 2021 WL 3616067, at *4 (6th Cir. Aug. 16, 2021); *see also Markakos v. Medicredit, Inc.*, No. 20-2351, 2021 WL 1937267 (7th Cir. May 14, 2021) (collecting cases).

The amended complaint alleges that Plaintiffs' loss resulted *both* from Argon's violations of the CFL (which rendered the consumer loan agreements void, or partially invalid, by operation of law) *and* from FRS's fraudulently unfair business practices (as it sought to collect on the loans). This dual causation does not undermine Plaintiffs' standing to bring their UCL Claim. The California Supreme Court has found that "[i]t is not ... necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor

11

influencing his conduct. ... It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision." *In re Tobacco II Cases*, 207 P.3d at 39.

Based on the foregoing reasoning, the court finds that Plaintiffs have pleaded facts sufficient to establish their constitutional and statutory standing to sue FRS under the UCL. Consequently, FRS's motion to dismiss is denied with respect to Plaintiffs' UCL Claim.

## II.   *Plaintiffs' Allegations Fail to Establish Essential Elements of the Breach of Contract Claim*

Under California law, "[t]he elements of a cause of action for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Coles v. Glaser*, 205 Cal. Rptr. 3d 922, 927 (Ct. App. 2016) (internal citations and quotations omitted).

FRS argues that the breach of contract claim fails because Plaintiffs fail to allege (1) the existence of an enforceable contract between themselves and FRS, and (2) that Plaintiffs themselves performed under the contract or had an excuse for non-performance. Plaintiffs argue in response that FRS has stepped into the shoes of Argon, such that FRS can be held liable for breaching the consumer loan agreements, and that the breach of contract claim is pleaded as an alternative to the other claims in Plaintiffs' amended complaint. Plaintiffs' arguments do not salvage the amended complaint's baldly conclusory allegations, and the breach of contract claim is dismissed without prejudice.

Plaintiffs' breach of contract claim is pleaded in four conclusory paragraphs, one of which simply incorporates the prior paragraphs. Adv. Dkt. No. 13, paras. 69-72. The remaining three paragraphs allege: that the consumer loan agreements are either void or partially invalid, that FRS

12

breached the consumer loan agreements by taking money from Plaintiffs and that Plaintiffs were damaged by paying money which they did not owe. One flaw in Plaintiffs' breach of contract claim is that if the loan agreements are void, as the claim alleges, then there is no contract to breach. In California, a void contract "has no legal entity for any purpose and neither action nor inaction of a party to it can validate it." *Yvanova v. New Century Mortg. Corp.*, 365 P.3d 845, 852 (Cal. 2016) (internal quotations omitted). Put more succinctly by the California court: "[a] void thing is as no thing." *Id.*

Plaintiffs argue that the breach of contract claim is pleaded in the alternative, but that response is inadequate. Ignoring the contention that the loans may be void and acknowledging that the loan agreements themselves are valid but contain certain invalid provisions, the breach of contract claim still runs into problems. Foremost among them is that Plaintiffs fail to allege that they performed under the contract or that they have an excuse for non-performance. Under the theory that the contracts are only partially invalidated, Plaintiffs would still be liable for the principle, and it is not clear from the pleadings that they are current on any repayment obligations.

Plaintiffs did allege that they made some payments and argue in their Response that this constitutes substantial performance. "Substantial performance means that there has been no willful departure from the terms of the contract, and no omission of any of its essential parts, and that the contractor has in good faith performed all of its substantive terms." *Connell v. Higgins*, 170 Cal. 541, 556 (1915). Plaintiffs' substantial performance argument, advanced with no supporting law, fails because nowhere in the amended complaint do they allege that they sufficiently performed— nor are there facts alleged that would allow the court to reasonably conclude that Plaintiffs sufficiently performed. Even if substantial performance is acceptable here (which is unclear),

Plaintiffs have failed to plead sufficient allegations to support the second element of a breach of contract claim under California law.

Beyond Plaintiffs' failure to perform, FRS also argues that Plaintiffs failed to allege that FRS was a party to the consumer loan agreements or an assignee that voluntarily accepted the benefits of those agreements. "As a general matter, a non-party, or nonsignatory, to a contract is not liable for a breach of that contract." *Chan v. Empire Fire & Marine Ins. Co.*, No. C 10-02528 EJD, 2011 WL 3267765, at *5 (N.D. Cal. July 29, 2011); *see also Henry v. Associated Indem. Corp.*, 266 Cal. Rptr. 578 (Ct. App. 1990) (finding insurance adjuster not liable for breach of contract where contract is between insurer and insured only). Plaintiffs, in their Response, note that there are exceptions to this rule, including when a party voluntarily accepts the benefit of a transaction. *See* Cal. Civ. Code § 1589 (West); *see also Hearn Pac. Corp. v. Second Generation Roofing, Inc.*, 201 Cal. Rptr. 3d 806, 822 (2016); *Melchior v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 354–55 (2003) (finding that company that accepted benefits of a release agreement must also bear the burdens of it). While Plaintiffs are correct, and the exception may exist here, they fail to point to sufficient allegations to that effect in their amended complaint.

FRS cites to the case *Ng v. Wells Fargo Foothill LLC*, No. CV1208942MMMAJWX, 2013 WL 12125565 (C.D. Cal. Mar. 14, 2013), as an example of a case where a secured creditor was found to be a non-party to the contract and therefore not liable for breach of contract. That case's holding is inapplicable here as the relationship between the parties is too foreign to be relatable. The court in *Ng* does, however, make its determination based on whether the plaintiff established that the defendant was an assignee or a successor in interest to the contract at issue. *Id*. at *3. The Plaintiffs allege neither. If pleading under a different theory, the allegations are not clear as to how FRS is liable for breaching a contract it is not a party to. Based on the facts alleged, the court

is unable to make "the reasonable inference" that FRS is liable for breach of contract, as is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 570. Consequently, Plaintiffs' breach of contract claim is dismissed without prejudice.

### III.   *Plaintiffs' Allegations Suffice to Establish Their Constitutional Standing to Bring the CFDCPA Claim*

FRS's motion to dismiss also argues that Plaintiffs' CFDCPA Claim fails to allege an injury in fact sufficient to establish standing under Article III of the Constitution. For the following reasons, this argument fails and FRS's motion to dismiss is denied with respect to Plaintiffs' CFDCPA Claim.

The CFDCPA is similar to the federal Fair Debt Collection Practices Act (the "FDCPA"), and FDCPA violations are violations of the CFDCPA. Cal. Civ. Code § 1788.17. These violations include falsely representing "the character, amount, or legal status of any debt" and "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false." 15 U.S.C.A. § 1692e. Thus, to establish standing to sue for a CFDCPA violation in federal court, a plaintiff must simply allege a concrete, particularized injury in fact that "is likely to be redressed by a favorable judicial decision" and is "fairly traceable" to the defendant's violation. *Spokeo, Inc.*, 136 S. Ct. at 1547. In the FDCPA context, the Seventh Circuit has clarified that a "violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos*, 997 F.3d at 780.

In their CFDCPA Claim, Plaintiffs specifically allege that the underlying consumer loan agreements are void and that FRS nonetheless continued to attempt to collect on them "by falsely representing, in collection letters to Plaintiffs … and in credit information provided to credit

reporting agencies, that they owed a specified sum of money that they did not owe." Dkt. No. 13, 16-17. Plaintiffs allege that they either made payments or had money taken from their accounts to pay the debt at issue, though they would not have made those payments had they known that they were not obligated to do so. Finally, a favorable judicial decision regarding the legal status of the consumer loan agreements may allow Plaintiffs to get some money back from FRS. For these reasons, Plaintiffs have alleged facts sufficient to establish their standing to invoke the court's subject matter jurisdiction to hear the CFDCPA Claim.

FRS also raises a statute of limitations argument against the CFDCPA Claim, noting a one-year statute of limitations. Cal. Civ. Code § 1788.30(f); *see also Best v. Ocwen Loan Servicing, LLC*, 279 Cal. Rptr. 3d 69 (Ct. App. 2021). Namely, FRS claims Plaintiffs should have pleaded an injury in fact that occurred within the year prior to the amended complaint. Plaintiffs disagree for several reasons, including that the argument is not properly developed.

While FRS generally points to the one-year statute of limitations, it fails to specifically address the numerous issues facing statute of limitations claims in this case. These include that Plaintiffs attempted to arbitrate many of these issues against FRS some time ago, but FRS successfully asked the court to stop those arbitrations as violations of the automatic stay. Dkt. Nos. 266, 278. Based on the language in FRS's original request to stop the arbitrations and their arguments in their present motion to dismiss, it is unclear when Plaintiffs could have been expected to assert their CFDCPA Claim.

It is possible some of Plaintiffs' asserted claims are time barred by the statute of limitations, but at the present stage of the proceeding and with only a perfunctory argument by FRS, the statute of limitations argument is not considered at this time. *See United States v. Macchione*, 660 F. Supp. 2d 918, 925 (N.D. Ill. 2009) (arguments insufficiently developed are deemed forfeited).

FRS is free to raise this challenge again at an appropriate time and more fully develop the statute of limitations argument.

## CONCLUSION

For the reasons stated above, defendant FRS's motion to dismiss Plaintiffs' amended complaint is hereby DENIED as to counts one and three (the UCL Claim and the CFDCPA Claim) and GRANTED as to count two (the breach of contract claim), which is dismissed without prejudice. A separate order will be entered accordingly.

Date: 09/02/2021

_____

Honorable Deborah L. Thorne

United States Bankruptcy Judge

17