UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE ARGON CREDIT LLC** | ) | |
| **Debtor.** | ) | **Chapter 7** |
| | ) | **Case No. 16-39654** |
| | ) | **Judge Deborah L. Thorne** |
| **LATONYA D. KITCHEN and KARENSA** | ) | |
| **HUTCHENS,** | ) | **Adv. Proc. No. 21-00048** |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| **FUND RECOVERY SERVICES, LLC,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Latonya Kitchen and Karensa Hutchens (together, "Plaintiffs") seek restitution from defendant Fund Recovery Services, LLC ("FRS") under California law.  In the motion before the court, FRS asks the court to dismiss Plaintiffs' amended complaint for lack of subject matter jurisdiction or, alternatively, to abstain from hearing the dispute.  Specifically, FRS argues that subject matter jurisdiction lapsed when the Trustee abandoned a portfolio of consumer loans including the loans extended to Plaintiffs by Argon Credit LLC and Argon X, LLC (together, "Argon" or the "Debtors").  As explained below, however, resolution of the dispute between Plaintiffs and FRS affects the size of FRS's unsecured claim, which in turn has a potential effect on the size of distributions to the Debtors' other unsecured creditors.  For that reason, and notwithstanding the abandonment of the loan portfolio, the court retains subject matter jurisdiction to hear the dispute as a noncore proceeding related to the Debtors' bankruptcy cases.  In the absence of compelling reasons to abstain, the court does not abstain from exercising its jurisdiction.  Therefore, FRS's motion is denied.

1

## **FACTUAL BACKGROUND**

In 2015 and 2016, Argon's affiliate entered into consumer loan agreements with California residents, including Plaintiffs.[1]  Argon X financed these consumer loans by borrowing under a loan and security agreement ("LSA") that gave its lender a security interest in the consumer loan receivables and a parent guarantee from Argon Credit.  That secured lender subsequently assigned all rights and remedies under the LSA and the guarantee—and its interest in the consumer loan receivables—to another entity, which subsequently assigned them to FRS.

In December 2016, the Debtors filed voluntary petitions for chapter 11 relief under the United States Bankruptcy Code.[2]  FRS's undisputed proofs of claim establish its $37.3 million claim against Argon X—secured by an estimated $25.6 million of consumer loan receivables as of May 2017—under the LSA and its contingent, unsecured claim against Argon Credit under the parent guarantee.  Due to the Debtors' inability to adequately protect FRS's property interest in the consumer loan receivables, the court modified the automatic stay and entered an order allowing FRS to collect on the consumer loans and apply amounts collected against its secured claim.  *See* Dkt. No. 129.

True to its name, FRS proceeded to recover funds amounting to several thousand dollars from Plaintiffs and at least $3 million from other California residents.  In response to FRS's collection efforts, Plaintiffs obtained legal counsel and began pursuing remedies against FRS.  The automatic stay was modified again to allow Plaintiffs and others to pursue arbitration against FRS in California, as required by the consumer loan agreements.  *See* Dkt. Nos. 327, 359.  When FRS

---

[1] Unless otherwise noted, the background recounted in this section comes from the facts pled by the Plaintiffs in their Amended Complaint.  *See* Adv. Dkt. No. 13.  The court also may take judicial notice of the contents of its dockets in the bankruptcy case and the present adversary proceeding.  *See In re Brent*, 458 B.R. 444, 455 n. 5 (Bankr. N.D. Ill. 2011).  Citations to "Adv. Dkt." refer to 21ap00048; citations to "Dkt." refer to 16bk39654 and citations to "Related Dkt." refer to 16bk39655.

[2] The jointly administered cases were converted to chapter 7 on January 11, 2017. *See* Dkt. No. 68.

refused to pay the arbitration fees or otherwise participate, the American Arbitration Association closed the arbitration cases.  That led to the present adversary proceeding, which commenced on March 18, 2021.  At that time, the Trustee estimated that the loan portfolio had no value, that Argon X effectively had no other assets and that Argon Credit had approximately $1.6 million in unencumbered assets.  *See* Dkt. No. 549; Related Dkt. No. 46.  Plaintiffs' amended complaint in this adversary proceeding alleged that the consumer loans on which FRS had collected were either partially or entirely void under California law.  On September 2, 2021, FRS's initial motion to dismiss the amended complaint was granted in part and denied in part, leaving two state law causes of action—and Plaintiffs' plea for restitution and declaratory and injunctive relief—pending before the court in this proceeding.  *See* Adv. Dkt. No. 27.

Then, on the Trustee's motion and after notice and a hearing, the court authorized the Trustee to abandon the loan portfolio including Plaintiffs' loans.  *See* Dkt. Nos. 552-554.  According to the Trustee, the loan portfolio was "of inconsequential value and benefit to the estate," especially in light of the "burdensome" legal costs associated with responding to the amended complaint.  11 U.S.C. § 554(a).  Collections on the loans in the portfolio had slowed drastically—from an average of approximately $400,000 per month in 2017 to approximately $25,000 per month in the first nine months of 2021.  Dkt. No. 552.  Having collected less than $9 million from consumers in four years, FRS itself valued the loan portfolio at only $1.3 million in October 2021.  *See id.*; Adv. Dkt. 13.  On these facts, the court endorsed the Trustee's assessment that it was "highly unlikely" that the loan portfolio would ever yield proceeds in excess of the $28.3 million still owing to FRS.  Dkt. No. 552.  After the abandonment became effective on October 10, 2021, FRS moved to dismiss the amended adversary complaint for lack of subject matter jurisdiction.

3

**JURISDICTION**

The court has subject matter jurisdiction to hear this proceeding under 28 U.S.C. § 1334(b). For the reasons discussed below, this is "a proceeding related to a case under title 11." 28 U.S.C. § 157(c).[3]   Consequently, while the court "may hear [the] proceeding" and "submit proposed findings of fact and conclusions of law to the district court," it may not, without the consent of all parties, "determine" the proceeding or enter "any final order or judgment." *Id*.

Regarding the court's authority to rule on the motion presented, no party disputes that "the court has jurisdiction to determine its jurisdiction." *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 775 (7th Cir.2002).   Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1409(a).

**DISCUSSION**

The Seventh Circuit's decision in *Bush v. United States*, 939 F.3d 839 (7th Cir. 2019), has three lessons that inform the court's response to FRS's motion to dismiss: (I) "related-to jurisdiction must be assessed at the outset of the dispute, and it is satisfied when the resolution has a potential effect on other creditors;" (II) *Matter of Xonics, Inc.*, 813 F.2d 127 (7th Cir. 1987), remains good law; and (III) 28 U.S.C. § 1334(c)(1) provides grounds to abstain from exercising related-to jurisdiction. *Bush*, 939 F.3d at 846.

**I.     At the outset of the dispute, this adversary proceeding was related to Argon's bankruptcy cases**

Like all federal courts, bankruptcy courts' subject matter jurisdiction is grounded in statute. *Celotex Corp. v Edwards*, 514 U.S. 300, 307 (1995).   28 U.S.C. § 1334(b) grants district courts

---

[3] The court's earlier opinion in this adversary proceeding treated it as a core proceeding.  Whether or not that was correct at the time, it is certainly not a core proceeding now that the loan portfolio has been abandoned.

4

"original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[4]  This statutory language (i.e., "arising under," "arising in," and "related to") limits the kinds of proceedings over which bankruptcy courts can exercise subject matter jurisdiction.  Only related-to jurisdiction is relevant here.[5]

A proceeding is "related to" a bankruptcy case if it affects "the amount of property for distribution or the allocation of property among creditors."  *Matter of FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) (quoting *Xonics*, 813 F.2d at 131).  *See also Celotex*, 514 U.S. at 308 n. 6; *In re Robert Plan Corp.*, 777 F.3d 594, 597 (2nd Cir. 2015) ("The standard for "related to" jurisdiction is whether the outcome of the proceeding could conceivably have any effect upon the debtors' estate being administered.") (quotations omitted).  For example, when chapter 7 debtors Donald and Kimberly Bush asked a bankruptcy court to determine the size of a tax penalty they owed the IRS, the IRS argued that the bankruptcy court had no jurisdiction to do so because the determination would not affect distributions to other creditors.  *In re Bush*, 2015 WL 12516007, at *2 (Bankr. S.D. Ind. Aug. 14, 2015).  After all claims had been filed, it turned out that the tax penalty was subordinate to more liabilities than the Bushes' assets could cover, so the size of the penalty could make no difference to the Bushes or their other creditors.  *Bush*, 939 F.3d at 845. Earlier in the case, however, it was not certain that "a decision could not have affected the allocation of assets among the creditors with outstanding claims."  *Id*.  On that basis, the Seventh

---

[4] In the Northern District of Illinois, the proceedings described in 28 U.S.C. § 1334(b) are automatically referred to the district's bankruptcy judges under Internal Operating Procedure 15(a).

[5] Arising-under jurisdiction must be based on a right or remedy expressly provided in the Bankruptcy Code. Plaintiffs' complaint "plainly does not arise under title 11 because it is a state law claim, not a claim 'created or determined by a statutory provision of title 11.'"  *In re Com. Loan Corp.*, 363 B.R. 559, 565 (Bankr. N.D. Ill. 2007) (quoting *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987)).  Arising-in jurisdiction covers proceedings that "arise *only* in bankruptcy cases," that "would have no existence outside of the bankruptcy" or "have no practical existence *but for* the bankruptcy."  *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 911-12 (7th Cir. 2011) (internal citations and quotations omitted, emphasis in the original).

Circuit eventually held that the bankruptcy court had jurisdiction to determine the penalty because at the time it was asked to do so, that determination had "a potential effect on other creditors." *Bush*, 939 F.3d at 846.  Together, *Bush* and *Celotex* confirm that "jurisdictional issues must be resolved *ex ante*, not in light of how things turn out."  *Id*.

At the time Plaintiffs filed their initial complaint against FRS, the resolution of the dispute affected the allocation of assets to other unsecured creditors.  To see this, recall that the dispute affects whether FRS gets to keep the $3 million it has already collected from California residents.[6] If FRS wins the dispute, the loans it collected on are valid, so it gets to keep the $3 million already collected and assert a roughly $28.3 million unsecured claim against Argon Credit under the guarantee.  On the other hand, if Plaintiffs win the dispute, all California loans in the portfolio are partially or entirely void, so FRS may have to give back some or all of the $3 million already collected from California residents—if that occurs, the size of FRS's unsecured claim against Argon Credit increases.  Therefore, the dispute affects the size of FRS's unsecured claim, which in turn affects the allocation of assets to the Debtors' other unsecured creditors.  *See* 11 U.S.C. § 726(b).  That means the dispute is related to the Debtors' bankruptcy cases, and the court has subject matter jurisdiction under 28 U.S.C. § 1334(b).

## II.    After abandonment, the court retains "related to" jurisdiction under *Xonics*

The Seventh Circuit has long held that abandoned property is not part of the bankruptcy estate, and abandonment ends the court's subject matter jurisdiction over the abandoned property. *See Xonics*, 813 F.2d at 131; *In re Edwards*, 962 F.2d 641, 643 (7th Cir.1992); *FedPak*, 80 F.3d at

---

[6] The dispute also affects the validity of the California loans in the portfolio that have not yet been collected, but because the loan portfolio was estimated to be worthless at the outset of the dispute, that effect is not relevant to the question of subject matter jurisdiction.

214. *See also Lulay L. Offs. v. Rafter*, 579 B.R. 827, 833 (N.D. Ill. 2017); *In re Green*, 241 B.R. 187, 197 (Bankr. N.D. Ill. 1999); *In re Abma*, 215 B.R. 148, 152 (Bankr.N.D.Ill.1997). As handed down in *Xonics*, the rule is clear, but it is subject to a narrow exception: "When the disposition of the abandoned assets cannot possibly affect other creditors, there is no reason for the bankruptcy court's jurisdiction to linger," but jurisdiction over abandoned assets may nonetheless persist when disputes over those assets "would affect the recoveries of other creditors." *Xonics*, 813 F.2d at 132. This exception honors the principle behind "related to" jurisdiction. If and only if a dispute over abandoned property affects the recoveries of other creditors is that dispute sufficiently "related to" the bankruptcy case for the bankruptcy court to retain subject matter jurisdiction under 28 U.S.C. § 1334(b).

The second lesson of *Bush* is that *Xonics* remains good law. *See Bush*, 939 F.3d at 846 ("This does not imply an overruling or even a modification of circuit precedent."). With that lesson in mind, the facts of the dispute between Plaintiffs and FRS fall squarely into the *Xonics* exception. As explained above in Section I, the dispute affects the size of FRS's unsecured claim, which in turn affects the recoveries of other unsecured creditors. That was true when the complaint was filed, and it is true now that the loan portfolio has been abandoned.[7] Consequently, under *Xonics*, the court retains subject matter jurisdiction over the dispute.[8]

---

[7] At the time of abandonment, the loan portfolio was worth $1.3 million (according to FRS) or zero (according to the Trustee), and it secured FRS's claim of $28.3 million. Finding the California loans void could increase the size of FRS's unsecured claim in two ways: (1) as explained above in Section I, it could increase FRS's total claim by as much as $3 million due to restitution payments to California residents (like Plaintiffs) who were victims of wrongful debt collection; and (2) (assuming there were still some California loans that remained uncollected in the portfolio) it would also reduce the value of FRS's collateral, increasing the size of FRS's unsecured deficiency claim under 11 U.S.C. § 506(a).

[8] To date, FRS has not waived or withdrawn its claim. Were FRS to waive or withdraw its claim, then the dispute between Plaintiffs and FRS could not possibly affect other creditors, and the court would no longer retain subject matter jurisdiction.

**III.     There are insufficient grounds to abstain at this time**

The third lesson of *Bush* is that even when, as here, a court has subject matter jurisdiction, 28 U.S.C. § 1334(c)(1) provides grounds to abstain from exercising it.  *See Bush*, 939 F.3d at 846. That provision clarifies that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding."  28 U.S.C. § 1334(c)(1).  Because the Bushes' tax dispute with the IRS was on the verge of trial in the Tax Court when they filed for bankruptcy, the Seventh Circuit remanded their case to the bankruptcy court with instructions to abstain "in the interest of justice."  *Bush*, 939 F.3d at 846-47.

As both parties acknowledge, there are also other, non-statutory reasons for a court to abstain from exercising its subject matter jurisdiction.  *See In re Chi., Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (citing 12 factors relevant to permissive abstention). For example, "the extent to which state law issues predominate over bankruptcy issues, … the difficulty or unsettled nature of the applicable law, [and] the presence of a related proceeding commenced in state court or other nonbankruptcy court" can all provide reasons to abstain.  *Id.*

Upon consideration of the statute and case law, the court finds that at this time abstention would not serve the interest of justice.  It is true that state law issues predominate over bankruptcy issues, but the applicable state law is hardly difficult or unsettled.  Furthermore, other than the arbitrations (which were closed due to FRS's intransigence), no related proceedings have been initiated in state court or any other forum, so mandatory abstention under 28 U.S.C. § 1334(c)(2) is not required.  Unlike in *Bush*, here the exercise of the court's jurisdiction does not stymy proceedings before another court poised to administer the law.  No "interest of comity with State courts or respect for State law" militates against the continued exercise of jurisdiction by the court

before which the record in this case has developed over the last five years.  28 USC § 1334(c)(1). In the absence of a related state court proceeding, it is even plausible that respect for California law weighs in favor of giving Plaintiffs a chance to vindicate their rights in this adversary proceeding.  Of course, should any state court proceeding be initiated in the future, this court would be glad to reconsider then whether abstention is appropriate on that basis.

### CONCLUSION

Because the dispute between Plaintiffs and FRS affects distributions to Argon's other unsecured creditors, the court has subject matter jurisdiction to hear it and declines to abstain. Accordingly, FRS's motion is DENIED.

Dated:  December 8, 2021

ENTER:

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge

9