UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE ARGON CREDIT LLC | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | Case No. 16-39654 |
| | ) | Judge Deborah L. Thorne |
| LATONYA D. KITCHEN and KARENSA | ) | |
| HUTCHENS, | ) | Adv. Proc. No. 21-00048 |
| Plaintiffs, | ) | |
| v. | ) | |
| FUND RECOVERY SERVICES, LLC, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The matter comes before the court on a motion for class certification filed by Latonya D. Kitchen and Karensa Hutchens (together, "Plaintiffs"). Plaintiffs allege that defendant Fund Recovery Services, LLC ("FRS") violated California law when it collected on consumer loans extended to Plaintiffs by two Argon entities ("Argon" or "Debtors"). They seek to represent a class of other California residents who obtained allegedly void loans from Argon and from whom FRS took money under the authority of the Argon loan agreements. As explained below, the motion for class certification is granted.

## BACKGROUND

In 2015 and 2016, Argon's affiliate entered into consumer loan agreements with California residents, including Plaintiffs.[1] The agreements identified "Argon LLC" as the lender. Argon financed these consumer loans by borrowing under a loan and security agreement ("LSA") that gave its lender a security interest in the consumer loan receivables and a parent guarantee from

---

[1] Unless otherwise noted, the background recounted in this section comes from the facts pled by the Plaintiffs in their Amended Complaint. *See* Adv. Dkt. No. 13.

Argon Credit. That secured lender assigned all rights and remedies under the LSA and the guarantee—and its interest in the consumer loan receivables—to another entity, which subsequently assigned them to FRS.

In December 2016, the Debtors filed voluntary petitions for chapter 11 relief under the United States Bankruptcy Code, and the jointly administered cases were later converted to chapter 7. FRS holds a $37.3 million claim against Argon under the LSA, secured by an estimated $25.6 million of consumer loan receivables. Due to the Debtors' inability to adequately protect FRS's property interest in the consumer loan receivables, the Court modified the automatic stay and entered an order allowing FRS to collect on the consumer loans and apply amounts collected against its secured claim. *See* Dkt. No. 129.

During these collection efforts, FRS presented itself to borrowers as Argon by using the name, phone number, email address, collection letters and invoices associated with Argon. FRS also threatened to report delayed payments and nonpayments to credit rating agencies if the borrowers did not pay immediately. Under the heading "Payment Method," the consumer loan agreements included an elective option (referred to as an "ACH Authorization") by which Plaintiffs could authorize Argon to debit Plaintiffs' checking accounts for amounts owing on each scheduled payment date or thereafter. *See* Dkt. No. 279, Ex. 1, at 9. The consumer loan agreements provided that the ACH Authorization would remain in full force and effect until "Argon LLC" had "received written notification from [Plaintiffs] of its termination." *Id.* at 10. FRS used or threatened to use the ACH Authorization to take money from Plaintiffs' accounts. Claiming the authority of the loan agreements, FRS collected thousands of dollars from Plaintiffs and over $3 million total from California residents.

In response to FRS's collection efforts, Plaintiffs obtained legal counsel and began pursuing remedies against FRS. The automatic stay was modified again to allow Plaintiffs and others to pursue arbitration against FRS in California, as required by the consumer loan agreements. *See* Dkt. Nos. 327, 359. When FRS refused to pay the arbitration fees or otherwise participate, the American Arbitration Association closed the arbitration cases. That led to the present adversary proceeding, which commenced on March 18, 2021. Plaintiffs' amended complaint in this adversary proceeding alleged that the consumer loans on which FRS had collected were either partially or entirely void under California law. On September 2, 2021, FRS's initial motion to dismiss the amended complaint was granted in part and denied in part, leaving two state law causes of action—one under California's Unfair Competition Law ("UCL") and the other under California's Fair Debt Collection Practices Act ("CFDCPA")—pending in this proceeding. *See* Adv. Dkt. No. 27. FRS then moved to dismiss the amended complaint for lack of subject matter jurisdiction, and that motion was denied on December 8, 2021. *See* Adv. Dkt. No. 40. The Court found that the resolution of this dispute between Plaintiffs and FRS would affect the size of FRS's unsecured claim and, in turn, impact the allocation of Debtors' assets to other creditors. *Id.*

Now before the Court is Plaintiffs' motion for class certification. Plaintiffs move to certify a class under Rule 23(b)(3) consisting of "[a]ll California residents who obtained loans in 2015 or 2016 pursuant to a loan agreement identifying 'Argon LLC' as the lender (usually on page 2 or 3) and from whom money was taken or received by Fund Recovery Services under the authority of the Argon loan agreement." FRS has objected to class certification, arguing that Plaintiffs lack standing and that the requirements of Rule 23 have not been satisfied.

**DISCUSSION**

### I.   *Standing*

As a threshold matter, FRS asserts that Plaintiffs do not have standing because they have "come out ahead financially"—they received more from their loan proceeds and First Associate refunds than they have repaid on their loans. *See* Def.'s Objection to Pl.'s Mot. for Class Certification ¶ 19. The Court rejected this same argument in the context of FRS's motion to dismiss, *see* Adv. Dkt. No. 27, and FRS has not put forward any new arguments to support its conclusion that the Plaintiffs lack standing. Nonetheless, the Court briefly reviews how Plaintiffs have standing to bring claims under the UCL and the CFDCPA.

A plaintiff has standing under the UCL if they suffer an economic injury that was caused by the defendant's allegedly unfair business practice. *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (2011). "There are innumerable ways in which economic injury from unfair competition may be shown." *Id.* Plaintiffs' amended complaint alleges an economic injury (the money FRS took from their bank accounts) caused by FRS's practice of collecting on the void or partially void Argon loan agreements. The fact that Plaintiffs paid in response to an unlawful demand for payment—regardless of whether Plaintiffs would have owed money to FRS if the consumer loan agreements had been valid—is enough to confer standing. *See Fireside Bank v. Superior Ct.*, 155 P.3d 268, 282 (2007).

In fact, courts have often found standing under the UCL when it appears that plaintiffs incurred a "net benefit" or fully mitigated their losses. *See, e.g.*, *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2020 WL 5910077, at *9 (N.D. Cal. Oct. 6, 2020) ("The court need not decide whether [plaintiff] received a full refund of the garnished amount because it is undisputed that her wages were garnished. Her claim accrued at the moment she paid money to which Defendants were not entitled, notwithstanding any repayment of the sums."); *Poghosyan v. First*

4

*Fin. Asset Mgmt., Inc.*, No. 119CV01205DADSAB, 2020 WL 433083, at \*8 (E.D. Cal. Jan. 28, 2020) (finding that plaintiff had standing to bring a UCL claim against a debt collector, despite incurring a "net benefit" from settling a debt); *Smit v. Charles Schwab & Co.*, No. 10-CV-03971-LHK, 2011 WL 846697, at \*9 (N.D. Cal. Mar. 8, 2011) (finding that plaintiffs had standing under the UCL to challenge an investment fund's unlawful activity even though they gained money from the fund); *Clayworth v. Pfizer, Inc.*, 233 P.3d 1066, 1087 (2010) (finding that plaintiffs had standing under the UCL even though they were able to fully mitigate their economic losses because a party's inability to "prove a right to damages . . . does not demonstrate that it lacks standing to argue for its entitlement to them").

Plaintiffs next claim is brought under the CFDCPA, which is similar to the federal Fair Debt Collection Practices Act (FDCPA). Violations include falsely representing "the character, amount, or legal status of any debt" and "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false." 15 U.S.C. § 1692e. "[A]n FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt." *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021). Plaintiffs allege that FRS made false representations in collection letters regarding the sum of money they owe and that, because of these representations, Plaintiffs made payments.

FRS cites to *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934 (7th Cir. 2022) in support of its argument that Plaintiffs have no standing to bring the CFDCPA claim. In *Pierre*, though, the plaintiffs did not have standing under the FDCPA because—even though they "received allegedly defective letters"—they were not harmed. "[C]ritically, [the plaintiff] didn't make a payment, promise to do so, or otherwise act to her detriment in response to anything in or omitted from the

5

letter." *Id.* at 939. It followed that there was "nothing for the court to remedy." *Id.* But, unlike the plaintiff in *Pierre*, Plaintiffs Kitchen and Hutchens *did* make payments. The fact that they acted to their detriment in response to FRS's collection letters makes this case dissimilar to those in which courts have found no standing under the FDCPA. *See, e.g.*, *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021) ("[Plaintiff], who says that she was confused by the letter she received, does not contend that the letter's supposed lack of clarity led her to take any detrimental step, such as paying money she did not owe. She therefore needs some other way to show injury."); *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (finding that plaintiffs lacked standing where they "did not contend, for example, that [defendant]'s communications caused the plaintiffs to pay debts they did not owe or created an appreciable risk that they might do so" or that they "were confused or misled to their detriment by the statements in the dunning letters, or otherwise relied to their detriment on the contents of the letters"). Plaintiffs contend that FRS's collection letters led to them paying money they did not owe; they have standing to bring a CFDCPA claim.

FRS also asserts that the CFDCPA's one-year statute of limitations precludes standing and class certification. When FRS made the same argument at the motion to dismiss stage, this Court found this argument underdeveloped:

> While FRS generally points to the one-year statute of limitations, it fails to specifically address the numerous issues facing statute of limitations claims in this case. These include that Plaintiffs attempted to arbitrate many of these issues against FRS some time ago, but FRS successfully asked the court to stop those arbitrations as violations of the automatic stay. Dkt. Nos. 266, 278. Based on the language in FRS's original request to stop the arbitrations and their arguments in their present motion to dismiss, it is unclear when Plaintiffs could have been expected to assert their CFDCPA Claim.

> It is possible some of Plaintiffs' asserted claims are time barred by the statute of limitations, but at the present stage of the proceeding and with only a perfunctory argument by FRS, the statute of limitations argument is not considered at this time. *See United States v. Macchione*, 660 F. Supp. 2d 918, 925 (N.D. Ill. 2009) (arguments insufficiently developed

6

are deemed forfeited). FRS is free to raise this challenge again at an appropriate time and more fully develop the statute of limitations argument.

Adv. Dkt. No. 27 at 16–17. FRS has renewed this challenge, but it has not attempted to further develop the issues noted above. Consequently, this argument is not considered at this stage, and FRS can reraise this issue more in-depth at an appropriate time.

## II.    *Class Certification*

A plaintiff seeking class certification under Rule 23 must "satisfy all of the criteria enumerated in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and fall within at least one subsection of Rule 23(b)." *Arreola v. Godinez*, 546 F.3d 788, 797 (7th Cir. 2008). For certification to be proper, the court must be certain after a "rigorous analysis" that the requirements of Rule 23 have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Though the class certification analysis may "overlap with the merits of the plaintiff's underlying claim," the merits "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). A court has "broad discretion" to determine whether class certification is appropriate. *Arreola*, 546 F.3d at 794.

### A.  Ascertainability

Before examining the requirements of Rule 23, the Court must assess whether the class is sufficiently ascertainable. The Seventh Circuit has explained that the class "must be defined clearly and that membership be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Class definitions "generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660.

7

Plaintiffs' proposed class consists of "[a]ll California residents who obtained loans in 2015 or 2016 pursuant to a loan agreement identifying 'Argon LLC' as the lender (usually on page 2 or 3) and from whom money was taken or received by Fund Recovery Services under the authority of the Argon loan agreement." Pl.'s Mot. for Class Certification at 7.

The class is certainly ascertainable, and FRS has not meaningfully contested that this requirement is met.[2] The class definition includes California residents who obtained loans pursuant to a loan agreement identifying "Argon LLC" as the lender and from whom FRS collected money under the authority of the Argon loan agreement. The class is further limited to California residents who obtained a loan in 2015 or 2016. This definition is not vague or subjective, and class members are easily identifiable.

### B. Rule 23(a) Requirements

#### 1. Numerosity

A class may only be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017). FRS has admitted that the proposed class consists of 1,595 members, and FRS does not challenge that the class is sufficiently numerous. Numerosity has been met.

#### 2. Commonality

Rule 23 requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "A question is common to the class if it generates a common answer, such that

---

[2] FRS argues that the class definition is flawed because the loan agreements identify the lender as "Argon Credit," despite the "typographical error in the omission of the word 'Credit' in one spot." Def.'s Objection to Pl.'s Mot. for Class Certification at 5 n.7.) This argument goes solely to the merits of Plaintiffs' claim, not the ascertainability of the proposed class.

determination of the question will 'resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 463–64 (N.D. Ill. 2017) (quoting *Wal-Mart*, 564 U.S. at 350). Even one common question is sufficient. *Wal-Mart*, 564 U.S. at 359.

Plaintiffs have raised a number of common questions including (but not limited to): Did the form contracts state "Argon LLC" was the lender? Is it legally sufficient for a lender to make a loan using the name of some variation of the actual name on the finance lender? Is it a violation of the CFDCPA if someone tries to collect money alleged owed on a loan that is void in full or part? The determination of these questions would generate common answers across the class and resolve the claims in this case in one stroke. *See Pawelczak v. Fin. Recovery Servs., Inc.*, 286 F.R.D. 381, 386 (N.D. Ill. 2012) ("The resolution of all class members' claims depends on whether such conduct constitutes an unfair debt collection practice under the FDCPA and [CFDCPA]. Thus, the crux of the case presents one common question of law."); *Quiroz v. Revenue Production Management, Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008) ("The requisite common nucleus of operative fact exists in FDCPA cases when the controversy arises from a standard form debt collection letter."). For these reasons, the Court finds that commonality is also met.

### 3. Typicality

Typicality means that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "tend[s] to merge" with the commonality inquiry. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Rule 23(a)'s typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993) (quoting *De La*

*Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.*; *see also Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) ("Typicality under Rule 23(a)(3) should be determined with reference to the [defendant]'s actions, not with respect to particularized defenses it might have against certain class members.").

FRS reiterates that because Plaintiffs lack standing, typicality is not met: "For the same reasons that they lack individual standing and have failed to demonstrate commonality, the Plaintiffs cannot establish that their claims are typical of the claims of the putative class members." Def.'s Objection to Pl.'s Mot. for Class Certification at ¶ 28. But, as explained above, Plaintiffs have standing to bring both their UCL and CFDCPA claims. Moreover, their claims are typical of the claims of the class. Plaintiffs allege that they were harmed by FRS's attempts to collect on loans made under the Argon loan agreements and that FRS represented itself to borrowers as Argon Credit in collection letters. They seek to represent a class that was harmed by the same course of conduct. The typicality requirement of Rule 23(a) is met here.

### 4. Adequacy of Representation

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Both the named plaintiffs and the proposed class counsel must be adequately able to represent the class. *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) ("This adequate representation inquiry consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel.").

The Court finds that the class counsel is adequate. Mr. Wilens has arbitrated more than thirty cases based on the Argon loan agreements and has previously been appointed as class counsel in other lawsuits. Pl.'s Mot. for Class Certification at 13. FRS does not contest that Mr. Wilens is adequate class counsel.

FRS does, however, contend that the named Plaintiffs are not adequate class representatives because they are subject to defenses that are not applicable to the class as a whole. Namely, FRS alleges that Plaintiffs retained the full amount of their loan proceeds (meaning, again, that they lack standing), received partial refunds of their loan payments from First Associates, and that they might be subject to a statute-of-limitations defense for their CFDCPA claim. As explained above, Plaintiffs have standing to challenge FRS's allegedly unlawful collection attempts. Likewise, the statute-of-limitations issue has not been sufficiently developed for the Court to make findings at this stage. This leaves FRS's assertion that Plaintiffs' refunds from First Associates make them inadequate class representatives. The Court does not find this argument persuasive; Plaintiffs' claims only concern the collections *FRS* made under the authority of the Argon loan agreements. Any refunds that Plaintiffs received from First Associates—not FRS—are a separate matter and would not make Plaintiffs subject to a unique defense in this action. Plaintiffs are adequate class representatives.

### C.  Rule 23(b)(3) Analysis

For certification as a rule 23(b)(3) class, a plaintiff must "show that questions of law or fact common to the class members predominate, and that the class device is the superior method for adjudicating those claims." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1029 (7th Cir. 2018). "The objective of the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency. When common issues predominate, class actions achieve these objectives by

11

minimizing costs and avoiding confusion that would result from inconsistent outcomes." *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 372 (N.D. Ill. 2008).

### 1. Predominance

The predominance inquiry is similar to commonality but "far more demanding." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997). "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton*, 907 F.3d at 1029; *see also Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 586 (N.D. Ill. 2018) ("Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." (quoting *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016)).

Common questions of law and fact predominate over individual questions here. Questions such as the validity of the Argon loan agreements and the lawfulness of FRS's collection attempts can be answered on a class-wide basis. FRS states that individual questions predominate because each class member will have to prove an economic loss and causation and, moreover, that there will need to be an individualized determination of each class member's outstanding loan liability. While each class member's economic loss is an individualized question, "[t]he fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015). Because Plaintiffs' claims are based upon FRS's conduct common to all class members—and can be resolved for all class members in a single adjudication—the Court is satisfied that common questions predominate over individual ones.

### 2. Superiority

The Court also must determine whether a class action is the superior method for adjudicating Plaintiffs' claims. Rule 23(b)(3) lists several factors to guide this assessment: the class members' interests in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3).

Plaintiffs note that FRS took on average approximately $2,137 per borrower (based on the number of class members) and that class members would need the help of counsel to sue FRS. *See.* Pl.'s Mot. for Class Certification at 15–16. Moreover, no other borrowers have brought claims against FRS pursuant to the Argon loans. *Id.* at 16. FRS does not dispute these facts in their objection to class certification. The Seventh Circuit has explained that "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); *see also Jackson v. Nat'l Action Fin. Servs.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) ("A class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue claims individually."). A class action is the superior method of resolving Plaintiffs' claims, and Rule 23(b)(3)'s superiority requirement is met.

### CONCLUSION

For the reasons stated above, defendant FRS's motion for class certification is GRANTED.

Dated:  September 15, 2022

_____
Honorable Deborah L. Thorne

13