**LAKESHORE LAW CENTER**
Jeffrey Wilens, Esq. (State Bar No. 120371)
Macy Wilens, Esq. (State Bar No. 328204)
18340 Yorba Linda Blvd., Suite 107-610
Yorba Linda, CA 92886
714-854-7205
714-854-7206 (fax)
jeff@lakeshorelaw.org
macy@lakeshorelaw.org

**Attorneys for Plaintiffs**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE ARGON CREDIT LLC, | ) Chapter 7 No. 2016-39654 |
| Debtor. | ) Adv. Proc. No. 21-00048 |
| | ) Hon. Deborah L. Thorne |
| LATONYA D. KITCHEN and | ) **Class Action** |
| KARENSA HUTCHENS, | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) **PLAINTIFFS' MOTION FOR** |
| FUND RECOVERY SERVICES, | ) **TERMINATING SANCTIONS AND** |
| LLC, | ) **ENTRY OF JUDGMENT, POINTS** |
| | ) **AND AUTHORITIES,** |
| Defendants. | ) **DECLARATION IN SUPPORT** |
| | ) Hearing Date: 2-14-24, 10:45 am CT |
| | ) Department 682 |

TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on the 14th day of February 2024, at the hour of 10:45 a.m. Central Time, I will appear before the Honorable Deborah L. Thorne, or any judge sitting in that judge's place, either in courtroom 682 of the Everett McKinley Dirksen United States Courthouse or electronically as described below, and present the motion of

1

PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND ENTRY OF JUDGMENT

Plaintiffs Latonya D. Kitchen and Karensa Hutchens for an order pursuant to Rule 16 (f) imposing terminating sanctions on Defendant Fund Recovery Services, LLC, and entering a final judgment, including attorney's fees and costs, a copy of which is attached.

**Important: Only parties and their counsel may appear for presentment of the motion electronically using Zoom for Government. All others must appear in person.**

To appear by Zoom using the internet, go to this link: https://www.zoomgov.com/. Then enter the meeting ID and no passcode is required. The meeting ID is **160 9362 1728.** The meeting ID and passcode can also be found on the judge's page on the court's web site.

To appear by Zoom using a telephone, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the same meeting ID and passcode.

If you object to this motion and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without calling it.

DATED: February 2, 2024

                Respectfully submitted,

                By  */s/ Jeffrey Wilens*

                Jeffrey Wilens, Esq., Pro Hac Vice
                Lakeshore Law Center
                18340 Yorba Linda Blvd., Suite 107-610

Yorba Linda, CA 92886
714-854-7205
714-854-7206 (fax)
JEFF@LAKESHORELAW.ORG

**CERTIFICATE OF SERVICE**

I certify that I am a citizen of the United States and a resident of Orange County, State of California. I am over the age of 18 years and am not a party to this Action. My business address is 18340 Yorba Linda Blvd., Suite 107-610, Yorba Linda, CA 92886.

On February 2, 2024, I caused to be served a true copy of this notice and the attached motion, declarations and exhibits upon the parties in the Service List through the Court's ECF System, or by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid through United States Postal Service at Yorba Linda, California, addressed as set forth below this declaration.

I declare under penalty of perjury and under the laws of the State of California, that the foregoing is true and correct. Executed this 2nd day of February 2024 at Yorba Linda, California.

By  */s/ Jeffrey Wilens/*

Jeffrey Wilens, Esq., Pro Hac Vice

SERVICE LIST

| Peter J. Roberts, Esq.<br>COZEN O'CONNOR<br>123 North Wacker Dr., Suite 1800<br>Chicago, Illinois 60606<br>(312) 382-3100<br>proberts@cozen.com<br>peter-roberts-1301@ecf.pacerpro.com | Derek V. Lofland<br>derekloflandesq@gmail.com<br>SERVED ELECTRONICALLY |
|---|---|

3
PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND ENTRY OF JUDGMENT

| | |
|---|---|
| cknez@cozen.com<br>SERVED ELECTRONICALLY | |
| Patrick S. Layng<br>USTPRegion11.ES.ECF@usdoj.gov<br>SERVED ELECTRONICALLY | |

**STATEMENT OF CASE**

As will be demonstrated below, Defendant Fund Recovery Services, LLC has repeatedly refused to comply with court orders regarding class notice. This bad faith conduct merits imposition of sanctions. The court already ordered monetary sanctions and for Defendant to comply by producing the class list. It has intentionally refused to do so. Now it is time for terminating sanctions and final judgment to be imposed.

Plaintiffs brought this class action against Defendant FRS for violation of California Business and Professions Code § 17200 et. seq., the Unfair Competition Law (UCL) and violation of California Civil Code § 1788 et. seq., the California Fair Debt Collection Practices Act (Cal-FDCPA). (Doc. 13.)

During the course of discovery, FRS produced:

- Interrogatory responses stating that it collected money from 1,595 borrowers who were California residents according to the loan agreements and that the amount collected from them was $3,409,387. (Doc. 54-1, pp. 80-81) (Wilens Declaration, ¶ 2.)

- A spreadsheet showing each payment collected from Plaintiffs and seven random class members and how it was allocated to principal, finance charges and late fees. (Doc. 54, p. 10; Doc. 54-1, pp. 88-94; Doc. 54-2, pp. 226-232) (Wilens Declaration, ¶ 3.)

- Exemplars of collection letters and billing statements that were sent to plaintiffs and other class members, and which stated how much money (according to FRS) was owed on the loans. The billing statements had the names and addresses of the debtors, showing California addresses. (Doc. 54-1, pp. 41-74.) (Wilens Declaration, ¶ 4.)

- Exemplars of the loan agreements. (Wilens Declaration, ¶ 5; Exhibit 1.)

A motion for class certification, opposition and reply papers were filed. The court granted class certification and issued an order September 15, 2022 defining the certified class as: "All California residents who obtained loans in 2015 or 2016 pursuant to a loan agreement identifying 'Argon LLC' as the lender (usually on page 2 or 3) and from whom money was taken or received by Fund Recovery Services under the authority of the Argon loan agreement." (Doc. 78) (Wilens Declaration, ¶ 6.)

Thereafter, FRS filed appeals to the district court and the 7th Circuit Court of Appeals. This court entered an order staying the case on November 3, 2022 so the appeals could be heard. The last appeal was denied on April 7, 2023 when the Court of Appeals denied a petition for panel reconsideration and motion to certify question of law to the California Supreme Court. (Wilens Declaration, ¶ 7.)

On April 13, 2023, the court lifted the stay on class discovery:

> The stay on discovery related to class notice is lifted and the parties may proceed with appropriate discovery for preparation of a proposed class notice and of the "class list" of persons who are class members, their contact information and amount and allocation of payments made to Fund Recovery Services, LLC by class members. (Doc. 91) (Wilens Declaration, ¶ 8.)

After Plaintiffs were unable to get any cooperation from FRS, the court addressed the issue on May 18, 2023 at a status conference, at which time the court stated that FRS should provide the class list by June 14, 2023 and stated, "This is a firm date." (Wilens Declaration, ¶ 9.)

Rather than comply, on June 14, 2023, FRS filed a motion to "extend time to generate class list and to split associated expenses." (Doc. 98.) FRS claimed without presenting evidence that it would cost at least $30,000 to "verify" the class list is accurate.

FRS claimed it is possible some borrowers received California loans but were residents of other states, while other borrowers were California residents but got loan agreements in other states. Plaintiffs opposed the motion. Plaintiffs noted these supposed concerns did not stop FRS from sending collection letters to the class members and taking their money from their bank accounts based upon the supposed legitimacy of the loans. Plaintiffs also noted that class members themselves could exclude themselves if they were not eligible and the class was limited to that defined by the court. (Wilens Declaration, ¶ 10.)

On June 28, 2023, at another status conference, the court denied FRS's motions without prejudice indicating that it wanted to see "what kind of preliminary list" FRS could come up with. (Wilens Declaration, ¶ 11.)

At the next Status Conference on July 26, 2023, FRS still had not come up with the class list or not even a "preliminary" version of it. The court continued the case to August 2, 2023. On that date, the court authorized Plaintiffs to take depositions of FRS witnesses regarding the issues involved in producing the class list. (Wilens Declaration, ¶ 12.)

The depositions of Walter Wojciechowski, Chief Financial Officer of Defendant Fund Recovery Services, LLC, and of Philip Burgess (FRS manager who verified its discovery responses) was taken on September 27, 2023. The depositions were largely a waste of time. Mr. Wojciechowski was cordial but knew little. Mr. Burgess was vitriolic, bordering on hysterical. The key testimony will be summarized below. Full transcripts will be concurrently lodged with the declaration of Wilens.

### **Wojciechowski testimony**

He testified that he was the chief financial officer of Fund Recovery Services. (Wilens Declaration, ¶ 13; Exhibit 2, p. 6:8-13.) He was primarily responsible for handling financial statements and reviewing tax returns to be filed by Princeton Alternative Income

Fund, which was the parent company of FRS. He provided statements to the investors in PAIF from 2017-2023 showing what money had been recovered by FRS. (Exhibit 2, pp. 13:12-14:18.)

He testified that Philip Burgess is a consultant to Microbilt[1] which was related to FRS, and which provided services to FRS. Mr. Burgess was in charge of handling litigation and collecting cash from Argon borrowers and returning that money to investors in FRS. (Exhibit 2, pp. 18:19-19:23.) Mr. Wojciechowski was unable to provide any other information pertinent to this motion. Instead, he repeatedly said that Mr. Burgess would have to be asked about the topics including,

- Whether FRS collected nine million dollars.
- Name of the loan processing system used by FRS
- The spreadsheet showing the money paid by plaintiffs and how the payments were allocated to principal and interest
- The collection letters and billing statements sent to class members
- The number of Argon borrowers who were California residents and the amount they paid.
- The class list information available in the loan management system used by FRS and the explanation why FRS has not produced the class list.
- Whether FRS is still collecting money from borrowers. (Exhibit 2, pp. 22:19-23:15, 26:21-25; 25:2-11; 29:7-30:22; 33:11-35:5; 36:21-25; 41:8-42:3.)

**Burgess Testimony**

---

[1] The deposition transcripts refer to "Microbuilt," but Plaintiffs believe the correct name is Microbilt.

4

PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND ENTRY OF JUDGMENT

Mr. Burgess can only be described as a hostile witness, one who is extremely unlikely to comply with any court order. Here are some examples, but Plaintiffs are not going to reprint them all here. (Wilens Declaration, ¶ 14; Exhibit 3, p. 6:9-24; 10:3-22; 12:3-14; 16:5-11; 27:14-23.)

Burgess confirmed FRS collected about $9 million dollars from Argon borrowers. (Exhibit 3, p. 9:2-18.) He explained that previously FRS went into the loan management system and determined there were 1,595 borrowers with California addresses. (Exhibit 3, p. 6:23.) However, he said FRS can no longer produce the list of 1,595 borrowers because it "does not have the resources to do that." When asked why FRS cannot just print out the list, he testified FRS must first "have to go through it to make sure it's accurate." (Exhibit 3, p. 14:15-25.) He explained that they cannot just print out the spreadsheet from the loan management system, because they must first pay somebody to "go through the loan management system and make sure the people were in California when they took those loans out." (Exhibit 3, p. 15:10-24.)

When pressed to explain exactly what FRS would have to do to produce the class list, he insisted that FRS would have to go to "technical people" at Microbilt and who could access the loan management system. He then lied and said it would cost $50,000 to activate some "license" for the software, but then admitted he did not know if the license was current or not. He then refused to answer how long it would take to log into the system ("it's a ridiculous question"). Although FRS previously claimed in its motion to split costs of class notice that it would cost $60,000 to turn the system on and export a spreadsheet, he insisted it was speculation how long it would take FRS to do this. He then claimed he does not know where the $60,000 figure came from, someone helped him, possibly named "Bob." He has no idea how long it would take "Bob" to log in and retrieve

5
PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND ENTRY OF JUDGMENT

the data for the class list. (Exhibit 3, pp. 18:8-24:25.)

Mr. Burgess essentially admitted that the cost of producing the class list based on the class as defined would be trivial. It became clear that his real concern was FRS does not trust the data in its loan management system. After spewing our spurious accusations against Plaintiff Kitchen (Exhibit 3, pp. 25:17-26:17) and a burst of profanity, Mr. Burgess took a break. When he returned, he explained their concern was that Argon might have made loans to persons residing in states outside of California and listed them as California residents to get around licensing issues. (Exhibit 3, p. 28:15-23.) However, when pressed how many of the previously identified 1,595 class members were not actually California residents, he admitted he had "no idea." Nor could he say how quickly the list could be produced without doing the verification process. (Exhibit 3, pp. 30:1-31:16.)

He also admitted that despite his misgivings that some loans might be illegal because they were made where Argon was not licensed to lend, FRS had no problem using the "tainted" data in the loan management system to collect money from the borrowers. (Exhibit 3, pp. 35:17-36:1.) He also made it clear that FRS would not allow access to its database to a consultant hired by Plaintiff's counsel to extract the information. (Exhibit 3, pp. 38:16-39:12.)

Finally, Mr. Burgess made it clear (if he has his way) FRS will not comply with a court order:

Q. Will you comply with a court order to export the data out of the spreadsheet, whether you think it's reliable or not, and send it to me? Yes, you will comply with a court order that says that or no, you won't?

MR. ROBERTS: Objection.

THE WITNESS: I'm not going to answer that.

BY MR. WILENS:

Q. So you refuse to comply with a court order?

A. That's the way you are twisting it.

Q. Answer it yourself. Will you comply with a court order?· Yes or no?

A. I said I'm not going to answer the question. What court orders? Someone that might pop up who knows what it says on it. (Exhibit 3: pp. 42:10-43-1.)

He was given one last chance, but still refused:

Q. I'm going to have to go back to the judge and ask the judge to order FRS to turn over the data forthwith, with or without verification because you have not. I'll give you one more chance. Can you tell us any reason why you cannot do that, whether you think it's not reliable or not, why you cannot have someone at Microbuilt take a few minutes to open the software, export the names and addresses of the 1,595 class members and a payment history to a spreadsheet and send it to me? Any reason why you can't do that?

A. I don't understand the question. I don't know you would want inaccurate information.

Q. Is there any reason why you cannot do that?

A. There's a lot of reasons why it doesn't make sense to do it, but do whatever you are going to do. (Exhibit 3, pp. 50:12-51:4.)

Based on the foregoing circumstances, on November 11, 2023, Plaintiff filed a motion for monetary sanctions and possible terminating sanctions. (Doc. 118) Opposition was filed by FRS (Doc. 123). The hearing was held on December 13, 2023. After the hearing, the Court issued an order imposing monetary sanctions and giving FRS one last chance to comply by producing the class list and paying monetary sanctions. The deadline was January 12, 2024. Philip Burgess from FRS was present at the hearing. (Doc. 128)

On January 17, 2024, the court held a compliance status hearing. No attorney for

7
PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND ENTRY OF JUDGMENT

FRS appeared but Mr. Burgess was present in the zoom gallery. The court was advised there had been no compliance. The court authorized Plaintiffs to file a motion for terminating sanctions and entry of a final judgment. Plaintiffs now bring that motion.

## POINTS AND AUTHORITIES

## ARGUMENT

**I. THE COURT HAS AUTHORITY TO IMPOSE SANCTIONS UNDER RULE 16 (F) AND ITS INHERENT POWER.**

By this motion, Plaintiffs seek an order striking the answer of FRS because 1) terminating sanction and 2) FRS is not represented by legal counsel and cannot appear by itself. If the motion is granted, the court should then enter the proposed judgment which includes an award of attorney's fees.

**A. A TERMINATING SANCTION IS AUTHORIZED AND JUSTIFIED.**

Rule 16 (f) (1) provides that "on motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney: (C) fails to obey a scheduling or other pretrial order." Subdivision (2) provides that "instead of or in addition to any other sanction, the court must "order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." In *Hart* v. *Blanchette* (W.D.N.Y. Mar. 29, 2019, No. 13-CV-6458CJS) 2019 U.S.Dist.LEXIS 55061, the plaintiffs in a class action sought sanctions against a defendant and its counsel based upon failure to comply with an order to produce the class list over a prolonged period of approximately 18 months. As a result, there was "extensive, protracted and expensive motion practice before a correct class list was produced." (*Id.* at *100-101.)

The court noted that sanctions could be pursued pursuant to Rules 16(f) and 37 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent powers, but concluded the conduct was most appropriately assessed under Rule 16(f). (Id. at *107-108.) It should be noted that in that case the class notice was sent out and the case resolved. By contrast, in the instant case, the lawsuit is dead in the water because of FRS' obstructive conduct.

While a terminating sanction is extreme, there is no lesser sanction that can suffice, after FRS has been given every chance to comply. An issue sanction or evidentiary sanction will not overcome the problem of noncompliance.

### B. JUDGMENT FOR THE CLASS SHOULD BE IN THE AMOUNT OF $4,179,309.66.

Plaintiffs consent to entry of a final judgment by the bankruptcy court judge pursuant to 28 U.S. Code § 157 and Rule 7008 of the Rules of Bankruptcy Procedure.

Judgment should be in the amount of $3,409,387 plus prejudgment interest and attorney's fees. As explained below, the grand total is $4,179,309.66.

The loan agreements state they are governed by California law. "GOVERNING LAW AND ASSIGNMENT: California law governs this Loan Agreement, except the Federal Arbitration Act … governs the Waiver of Jury Trail [sic] and Arbitration Provision." (Exhibit 1, pp. 4, 19, 34.) In addition, the loan agreements provide that the lender can recover attorneys' fees in a collection action. (Exhibit 1, pp. 12, 27, 42.) Pursuant to Civil Code § 1717, such a provision is deemed bilateral by operation of law; therefore, the borrowers (class members) are entitled to recover their attorney's fees since they are the prevailing party.

Prejudgment interest is also authorized by California law, Civil Code § 3287 (a) and Civil Code § 3289 (a), (b). The contract rate is greater than 10% but inasmuch as Plaintiffs contend the contracts did not charge a legal rate of interest, the statutory rate for purposes

9

PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND ENTRY OF JUDGMENT

of prejudgment interest is set at 10% by operation of law. (Civil Code § 3289 (b).) While we cannot know the date of each payment, we do know that as of the date interrogatory responses were given (April 15, 2022) the amount taken from class member was $3,409,387; as of that date for sure the amount in dispute was liquidated and interest can run from that date. Plaintiff will use that date to calculate prejudgment interest.

There are 670 days from April 15, 2022 to February 14, 2024. At 10%, daily interest is $934.0786. Total interest is $625,832.66. The calculations are below.

| Judgment Information (Required) | | | |
|---|---|---|---|
| Judgment Amount | Interest Rate | Judgment Date | End Date |
| $3,409,387.00 | 10.0000 % | 04/15/2022 | 02/14/2024 |

| Payment and/or Cost (Optional) | | | |
|---|---|---|---|
| Date | Payment Amount | Cost | Add |

| Results | | | | | |
|---|---|---|---|---|---|
| Judgment Amount | $3,409,387.00 | Daily Interest | $934.0786 | Days | 670 |
| Principal Reduction | $0.00 | Interest Accrued | $0.00 | | |
| Principal Balance | $3,409,387.00 | Interest to Date | $625,832.66 | GRAND TOTAL | |
| Costs After Judgment | $0.00 | Total Interest | $625,832.66 | | $4,035,219.66 |

Attorney's fees are authorized by the contract. For purposes of this judgment, the Class Members' attorney's fees are $141,870 as set forth below. However, this does not mean attorney's fees should be limited to that amount. Class counsel reserves the right to petition the court for an attorney's fee based on a percentage of the common fund obtained through this lawsuit. However, at this point, no money has been collected so it is premature to raise that argument. Instead, the lodestar should be calculated and added to the base judgment subject to further allocation if and when money is obtained.

Using the lodestar method, Lakeshore Law Center attorneys have the following hourly rates: Jeffrey Wilens ($775) and Macy Wilens ($275). These rates are justified by their experience and prior court orders. (Wilens Declaration, ¶¶ 15-16; Exhibit 6.) Our contemporaneous billing records show that Jeffrey Wilens spent 179.9 hours and Macy

Wilens spent 8.90 hours. (Exhibit 5) This includes a projected 0.5 hours for the court hearing on February 14th but otherwise only includes time spent up to January 31, 2024.

Therefore, the attorney's fees to be added to the judgment are $139,422.50 for Jeffrey Wilens and $2,447.50 for Macy Wilens for a total of $141,870. This includes fees for attorney time already ordered by the court as a sanction but never paid.

The judgment should also include costs. Exhibit 5 reflects costs of $2,220. This includes expenses already ordered by the court as a sanction but never paid.

**Based on the foregoing, the total judgment is calculated as follows: $3,409,387 in damages, $625,832.66 in prejudgment interest, $141,870 in attorney's fees and $2,220 in costs for a total of $4,179,309.66.** The court should retain jurisdiction for purposes of distribution of funds if and when any are recovered.

## CONCLUSION

For the above stated reasons, Plaintiffs respectfully urge the Court to grant the motion for terminating sanctions and enter a final judgment.

DATED: February 2, 2024

                Respectfully submitted,

                By     __/s/ Jeffrey Wilens_____

                      JEFFREY WILENS
                      Attorney for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
PLAINTIFFS' MOTION FOR TERMINATING SANCTIONS AND ENTRY OF JUDGMENT